# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2016AP1517 |
| COMPLETE TITLE: | Terrie Myers and Philip Myers, Petitioners-Appellants-Cross-Respondents-Petitioners, v. Wisconsin Department of Natural Resources, Respondent-Respondent-Cross-Appellant. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 378 Wis. 2d 220, 904 N.W.2d 144
(2017 – unpublished)

| | |
|---|---|
| OPINION FILED: | January 18, 2019 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | September 25, 2018 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Ashland |
| JUDGE: | Robert E. Eaton |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | A. W. Bradley, J. dissents (opinion filed). |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the petitioners-appellants-cross-respondents-petitioners, there were briefs filed and an oral argument by *Matthew A. Biegert* and *Doar, Drill & Skow, S.C.*, New Richmond.

For the respondent-respondent-cross-appellant, there was a brief filed and an oral argument by *Gabe Johnson-Karp*, assistant attorney general, with whom on the brief was *Brad D. Schimel*, attorney general.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2016AP1517
(L.C. No. 2015CV36)

STATE OF WISCONSIN                    :        IN SUPREME COURT

**Terrie Myers and Philip Myers,**

    **Petitioners-Appellants-**
    **Cross-Respondents-Petitioners,**

**FILED**

  **v.**

**JAN 18, 2019**

**Wisconsin Department of Natural Resources,**

Sheila T. Reiff
Clerk of Supreme Court

    **Respondent-Respondent-**
    **Cross-Appellant.**

---

REVIEW of a decision of the Court of Appeals. *Reversed.*

¶1 REBECCA FRANK DALLET, J. Philip and Terrie Myers seek review of an unpublished per curiam decision of the court of appeals[1] affirming in part and reversing in part the circuit court.[2] The Myers seek review of the Wisconsin Department of Natural Resources' (DNR) unilateral amendment to their pier permit.

---

[1] Myers v. DNR, No. 2016AP1517, unpublished slip op. (Wis. Ct. App. Aug. 29, 2017).

[2] The Honorable Robert E. Eaton of Ashland County Circuit Court presided.

¶2 In 2001, the Myers were granted a permit by the DNR and built a pier at their waterfront property on Lake Superior. In 2012 and 2013, the DNR received complaints from a neighboring property owner about the Myers' pier. The DNR conducted an investigation and requested that the Myers substantially modify their pier. The Myers declined to make the DNR's proposed changes. The DNR then issued a "Notice of Pending Amendment," held a public informational hearing, and ultimately issued a formal permit amendment requiring the Myers to significantly change their pier in one of two ways.

¶3 The Myers declined to comply with the DNR's permit amendment and instead filed a petition for Wis. Stat. ch. 227 (2015-16)[3] judicial review in the Ashland County Circuit Court. The circuit court denied the Myers' petition, finding that the DNR had the authority to issue an amendment to the Myers' pier permit. The circuit court then remanded the case to the DNR, finding that more fact-finding was needed as to the applicability of several statutory exemptions which could bar the DNR's action. Both parties appealed the circuit court's decision.

¶4 The court of appeals affirmed the circuit court's conclusion that the DNR had the authority to issue the Myers' permit amendment. The court of appeals reversed the circuit

---

[3] All subsequent references to the Wisconsin Statutes are to the 2015-16 version unless otherwise indicated.

court as to the statutory exemptions, concluding as a matter of law that the statutory exemptions did not apply.

¶5  On petition to this court, the Myers seek review of three issues:  (1) whether the DNR had the authority to amend their permit; (2) whether two exemptions in Wis. Stat. § 30.12(1k) barred the DNR's actions; and (3) whether the court of appeals could rely on "implicit findings" made by the DNR at a public informational hearing to conclude that the statutory exemptions in § 30.12(1k) did not apply to the Myers' pier.

¶6  We conclude that the DNR did not have the authority to unilaterally amend the Myers' permit.  We therefore reverse the decision of the court of appeals.  Because the DNR did not have the authority to amend the Myers' permit, we need not reach the issues related to the application of the statutory exemptions set forth in Wis. Stat. § 30.12(1k).

I.  FACTUAL BACKGROUND AND PROCEDURAL POSTURE

¶7  The Myers own waterfront property on Madeline Island on Lake Superior.  In December 1999, the Myers filed an application, pursuant to Wis. Stat. § 30.12, to construct a rock-filled pier next to the remnants of a dock that had been built on their property in the 1930s.  The DNR received several objections to the Myers' application.  The objectors were concerned that the proposed pier would result in beach erosion and other shoreline changes related to "littoral drift," the process of moving sediment along the shore.

¶8  In June 2001, the DNR held a contested hearing on the Myers' permit application.  On July 23, 2001, an administrative

3

law judge (ALJ) granted the Myers "a permit under Wis. Stat. § 30.12 for the construction of a structure." The permit granted the Myers permission to construct a pier consisting of "rock-filled cribs 10 feet in width extending 70 feet waterward from an existing 16-foot crib." The pier design also included a 14-foot L-extension with a 12-foot "flow-through opening" that would allow water and sediment to flow underneath and through the structure. The ALJ concluded that it was "unlikely that there [would] be detrimental impacts relating to shoreline alterations." However, the ALJ found that it was not always possible to predict the impact of a particular structure so he included the following language in the Myers' permit: "[t]he authority herein granted can be amended or rescinded if the structure becomes a material obstruction to navigation or becomes detrimental to the public interest" ("Condition 1"). The ALJ explained that Condition 1 would be "protective of unexpected impacts on neighboring properties relating to sand accumulation or beach starvation."

¶9 The Myers completed construction of their pier in October 2001 in accordance with the specifications set forth in the permit. In 2012 and 2013, the DNR received complaints from a neighboring riparian property owner who alleged that there was

4

shoreline erosion and a loss of riparian property[4] due to the Myers' pier.

¶10 As a result of these complaints, the DNR conducted an investigation and consulted with a coastal engineer, Gene Clark. Clark visited the Myers' property and wrote a report, detailing his opinion as to the effects of the Myers' pier. Clark ultimately concluded that because of "complexity of the mix of older and newer structures," as well as the fact that some littoral material "existed with just the older structures in place several decades ago," it was "extremely difficult to estimate how much if any additional littoral material trapping is occurring due only to the [Myers'] newer pier structures." The DNR sent the Myers a letter in July 2013, informing them that their pier was not in compliance with the 2001 permit. The DNR informed the Myers that the flow-through opening was not functioning as intended. Further, the DNR required the Myers to remove the two 24-foot cribs and replace the "bridge" between the crib and the L with a different system that allowed for the free movement of water and sediment. The Myers declined to institute the DNR's proposed changes.[5]

---

[4] Riparian rights are "special rights to make use of water in a waterway adjoining [an] owner's property." Movrich v. Lobermeier, 2018 WI 9, ¶22, 379 Wis. 2d 269, 905 N.W.2d 807 (citation omitted).

[5] Shortly thereafter, the Myers filed a petition for administrative review of the DNR's July 2013 letter. However, the DNR denied the request for review on the ground that no final agency action had taken place.

¶11 In November 2013, the DNR issued a Class I "Notice of Pending Amendment" indicating that it proposed to amend the Myers' 2001 permit to require expansion of the flow-through opening from 12 to 60 feet. The notice requested public comment on the proposed amendment. On January 7, 2014, the DNR held a public informational hearing on the amendment. An engineer testified in support of the Myers at the public informational hearing, asserting that the amendment was not supported by the site observations or any relevant technical evaluation.

¶12 On April 21, 2015, 14 years after the original permit was issued, and 15 months after the public hearing, the DNR issued an amendment which required the Myers to modify their pier in one of two ways. The DNR gave the Myers the following options: (1) remove two waterward cribs on the main stem of the pier to expand the flow-through opening from 12 to 60 feet; or (2) provide the DNR with certified engineering plans that depict an alternative opening to allow for the free movement of water and sediment. The DNR asserted that it had authority under Wis. Stat. § 30.12(3m) to issue this permit amendment. The DNR gave the Myers 30 days to decide on a modification option and 18 months to complete that modification.

¶13  The Myers filed a petition for Wis. Stat. ch. 227 judicial review in the Ashland County Circuit Court.[6]  In that action, the Myers asserted that:  (1) the DNR lacked authority to apply for and grant itself an amendment; (2) their pier was exempt from permit requirements, pursuant to Wis. Stat. § 30.12(1k)(b); (3) their pier was exempt from enforcement actions, pursuant to § 30.12(1k)(cm); and (4) the evidence did not support the DNR's decision to amend their permit.

¶14  The circuit court rejected the Myers' claim that the DNR lacked the authority to amend their 2001 permit.  However, the circuit court remanded the case to the DNR for additional factual development as to whether the exemptions in Wis. Stat. § 30.12(1k) applied to the Myers' pier.  The Myers appealed the circuit court's decision.  The DNR cross-appealed the circuit court's decision to remand for additional fact-finding.

¶15  The court of appeals issued a decision affirming in part and reversing in part the circuit court.  The court of appeals affirmed the circuit court's holding that the DNR had the authority to amend the permit and reversed the circuit court's remand for additional fact-finding.  The court of appeals concluded as a matter of law that neither of the

---

[6] Following the DNR's issuance of the permit amendment, the Myers filed a request for a contested case hearing.  After the DNR granted the request, the Myers waived that hearing and pursued judicial review.  The parties entered into a stipulation that the DNR would not raise the exhaustion doctrine as a defense to the Myers' petition.

exemptions applied because of "implicit findings" made by the DNR at the public informational hearing.

¶16 The Myers raise three issues on appeal to this court: (1) whether the DNR had authority to amend their permit; (2) whether two exemptions in Wis. Stat. § 30.12(1k) barred the DNR's actions; and (3) whether the court of appeals could rely on "implicit findings" made by the DNR at a public informational hearing to conclude that the statutory exemptions in § 30.12(1k) did not apply to the Myers' pier.

## II. STANDARD OF REVIEW

¶17 On a Wis. Stat. ch. 227 appeal we review the decision of the agency, not the circuit court. Hilton ex rel. Pages Homeowners' Ass'n v. DNR, 2006 WI 84, ¶15, 293 Wis. 2d 1, 717 N.W.2d 166. We have ended our practice of deferring to administrative agencies' conclusions of law. Tetra Tech EC, Inc. v. DOR, 2018 WI 75, ¶3, 382 Wis. 2d 496, 914 N.W.2d 21. Instead, we give "due weight" to the experience, technical competence, and specialized knowledge of an administrative agency in evaluating the persuasiveness of the agency's argument. Id. When a determination of the scope of an agency's power is central to resolution of the controversy, as in this case, we independently decide the extent of the agency-authority that the statute provides. See Rock-Koshkonong Lake Dist. v. DNR, 2013 WI 74, ¶¶61-62, 350 Wis. 2d 45, 833 N.W.2d 800.

¶18 This case involves interpretation of Wis. Stat. ch. 30, which regulates navigable waters. Statutory interpretation is a question of law that this court reviews de novo. Noffke ex

8

rel. Swenson v. Bakke, 2009 WI 10, ¶9, 315 Wis. 2d 350, 760 N.W.2d 156. The purpose of statutory interpretation is to "determine what the statute means so that it may be given its full, proper, and intended effect." State ex rel. Kalal v. Circuit Court, 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110. Statutory interpretation begins with the language of the statute. Kalal, 271 Wis. 2d 633, ¶45. Statutory language is "given its common, ordinary, and accepted meaning," unless there are technical or specially-defined words or phrases. Id., ¶45. If the statutory language yields a "plain, clear statutory meaning, then there is no ambiguity," and there is no need to consult extrinsic sources of interpretation. Id., ¶46.

## III. ANALYSIS

¶19 This dispute centers around whether the DNR had authority to unilaterally amend the Myers' permit 14 years after their pier was placed. Although not explicitly argued by the DNR, the court of appeals held that the DNR had the authority to amend the Myers' permit by reserving to itself that authority in Condition 1. Before this court, the DNR cites to two statutory authorizations of power in support of its ability to amend the Myers' permit: Wis. Stat. § 30.12(3m)(d)2. and Wis. Stat. § 30.2095(2). The DNR asserts that § 30.12(3m)(d)2. statutorily authorizes the placement of Condition 1 in the Myers' permit. Alternatively, the DNR argues that even absent Condition 1, § 30.2095(2) provides it with the authority to modify or rescind the permit for "good cause" because the Myers' permit never expired. We address each argument in turn.

9

A. Reservation of Authority

¶20 We first address the court of appeals' holding that the DNR could, absent statutory authorization, reserve to itself the authority to amend the Myers' permit in Condition 1. See Myers v. DNR, No. 2016AP1517, unpublished slip op., ¶14 (Wis. Ct. App. Aug. 29, 2017). Condition 1 reads "[t]he authority herein granted can be amended or rescinded if the structure becomes a material obstruction to navigation or becomes detrimental to the public interest." The court of appeals looked to the language of Condition 1 and held that no other explicit grant of authority was necessary. See Myers, No. 2016AP1517, ¶14 & n.2. The court of appeals also placed an additional burden on the Myers to cite to law indicating that the DNR was unable to reserve to itself such authority. See Myers, No. 2016AP1517, ¶14 & n.2. The court of appeals further determined that the Myers "agreed to the condition allowing amendment by accepting the permit."[7] See Myers, No. 2016AP1517, ¶14.

¶21 We conclude that the court of appeals erred in holding that Condition 1 in and of itself provided the DNR the authority to amend the Myers' permit. It is important to remember that administrative agencies are creatures of the legislature. An administrative agency has only those powers expressly conferred

---

[7] As the ALJ noted, this type of condition was "standard for solid dock structures on Lake Superior." There is no support for the premise that by accepting the permit the Myers waived their right to challenge future DNR actions.

10

or necessarily implied by the statutory provisions under which it operates.  See Kimberly-Clark Corp. v. Public Serv. Comm'n of Wis., 110 Wis. 2d 455, 461-62, 329 N.W.2d 143 (1983); Brown Cty. v. DHSS, 103 Wis. 2d 37, 43, 307 N.W.2d 247 (1981); American Brass Co. v. Wisconsin State Bd. Of Health, 245 Wis. 440, 448, 15 N.W.2d 27 (1944).  We resolve any reasonable doubt pertaining to an agency's implied powers against the agency.  See Kimberly-Clark Corp., 110 Wis. 2d at 462.  We conclude that absent statutory authorization, Condition 1 in and of itself cannot provide the DNR the authority to amend the Myers' permit.  We next turn to whether the DNR had statutory authorization to amend the Myers' permit.

B.  Wisconsin Stat. § 30.12(3m)(d)2.

¶22 The DNR argues that it had statutory authority pursuant to Wis. Stat. § 30.12(3m)(d)2. to insert Condition 1 in the Myers' 2001 permit because that condition implemented the criteria under § 30.12(3m)(c)1.-3.  Section 30.12(3m)(d)2. allows the DNR to "promulgate rules that limit the issuance of individual permits for solid piers."[8]  The statute further explains that these rules "may establish reasonable conditions to implement the criteria under par. (c)1. to 3."  Section 30.12(3m)(c) reads:

> (c)  The department shall issue an individual permit to a riparian owner for a structure . . . if the

---

[8] The rules promulgated by the DNR for pier-permitting standards are found in Wis. Admin. Code § NR 326 (Apr. 2005).

11

department finds that all of the following requirements are met:

    1. The structure or deposit will not materially obstruct navigation.

    2. The structure or deposit will not be detrimental to the public interest.

    3. The structure or deposit will not materially reduce the flood flow capacity of a stream.

¶23 The DNR likens Condition 1 to a "reasonable condition[] to implement the criteria under par. (c)1. to 3.," pursuant to Wis. Stat. § 30.12(3m)(d)2. The DNR reads the language of § 30.12(3m)(c) as imposing a requirement that a permit continuously satisfy the criteria in paragraphs 1. through 3. Therefore, according to the DNR, when, if at all, a permit fails to satisfy all three criteria in § 30.12(3m)(c)1.-3., the DNR may amend or rescind the permit pursuant to Condition 1.

¶24 There is no support in the plain language of Wis. Stat. ch. 30 for the DNR's claim that a pier permit carries with it an ongoing requirement to satisfy the criteria in Wis. Stat. § 30.12(3m)(c)1.-3.[9] The language of § 30.12(3m)(c)1.-3. explicitly uses the past tense "met" when it lists the requirements for granting a permit, thus signifying that the

---

[9] We decline to address legislative history or alleged legislative intent because the statute is unambiguous. If statutory language yields a "plain, clear statutory meaning, then there is no ambiguity," and there is no need to consult extrinsic sources of interpretation. State ex rel. Kalal v. Circuit Court, 2004 WI 58, ¶46, 271 Wis. 2d 633, 681 N.W.2d 110.

conditions must be fulfilled before the permit is granted. Courts must avoid interpretations that require inserting words into statutes. See Heritage Farms, Inc. v. Markel Ins. Co., 2009 WI 27, ¶14, 316 Wis. 2d 47, 762 N.W.2d 652; C. Coakley Relocation Sys., Inc. v. City of Milwaukee, 2008 WI 68, ¶24, 310 Wis. 2d 456, 750 N.W.2d 900. There is no language in ch. 30 that requires a permit to continuously satisfy the criteria in § 30.12(3m)(c)1.-3. and we will not read such language into the statute.

¶25 The DNR also argues that "the entire tenor" and "spirit" of Wis. Stat. ch. 30 suggests that a permit includes a requirement to continuously satisfy the criteria in Wis. Stat. § 30.12(3m)(c)1.-3. When pressed at oral argument, the DNR cited to several sections of ch. 30 that allegedly illustrate the legislature's intent that permits continue to govern piers indefinitely. This brings us to the question of whether a permit issued under § 30.12 is akin to a building permit or is a permit governing possession. This question is intertwined with the DNR's alleged second statutory authorization of power, Wis. Stat. § 30.2095.

### C. Wisconsin Stat. § 30.2095

¶26 Apart from the alleged authorization given to the DNR in Wis. Stat. § 30.12(3m)(d)2., the DNR relies on Wis. Stat. § 30.2095(2) as a separate avenue of independent authority to amend the Myers' permit. Section 30.2095(2) reads: "[f]or good cause, the department may modify or rescind any permit or contract issue under ss. 30.01 to 30.29 before its expiration."

The DNR's argument rests on the premise that because the Myers' pier was completed within three years, the Myers' permit never expired. Therefore, the DNR could modify or rescind the Myers' permit at any time pursuant to § 30.2095(2) for "good cause." We must first address the parties' dispute as to whether the permit was akin to a building permit or is a permit governing possession, and, accordingly when, if at all, the Myers' permit expired.

¶27 The Myers contend that their permit was akin to a building permit and that, according to its terms, it expired on July 23, 2004, three years after its issuance. The DNR asserts, and the court of appeals agreed, that because the pier was completed within the time limit set forth in the permit, the Myers' permit did not expire. As additional support for its position, the DNR asserts that a permit controls ongoing maintenance and use of a pier, even after its placement.[10]

¶28 We agree with the Myers' interpretation and conclude that, based upon a plain reading of the language of Wis. Stat. ch. 30, a permit issued under Wis. Stat. § 30.12 is akin to a building permit.

¶29 The Myers were granted "a permit under Wis. Stat. § 30.12 for the construction of a structure" that expired "three years from the date of [July 23, 2001], if the structure is not

---

[10] However, the DNR conceded at oral argument that there is no statutory language that indicates that a pier permit is a "possession permit."

14

completed before then." This language comports with the language set forth in Wis. Stat. § 30.2095(1)(a) which provides, in pertinent part, that a permit "issued under ss. 30.01 to 30.29 . . . is void unless the activity or project is completed within 3 years after the permit or contract was issued." Section 30.2095(1)(b) allows for an extension of the permit for "no longer than an additional 5 years if the grantee requests an extension prior to expiration of the initial time limit."

¶30 "[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." Kalal, 271 Wis. 2d 633, ¶46. By employing the phrase "unless the activity or project is completed" in Wis. Stat. § 30.2095(1)(a) as a reference point for when the permit becomes void, the legislature expressed its intent that the permit be for the completion of the activity or project for which the permit was granted, i.e., the placement of a pier. When § 30.2095(1) is read in conjunction with § 30.2095(2), it is clear that the "expiration" for the modification of a permit discussed in § 30.2095(2) is the earlier of the expiration date of the permit or the actual date when pier placement was completed.[11]

---

[11] Because a permit to build a pier expires upon its placement, the Myers' permit expired in October 2001 and would have been void by July 23, 2004 had the pier not been placed.

¶31  According to the DNR and the court of appeals, if pier placement is complete within the timeframe determined by Wis. Stat. § 30.2095(1)(a), the permit never expires.  If that were the case, the phrase "before its expiration" in § 30.2095(2) becomes superfluous since the DNR could "[f]or good cause" modify or rescind any non-void permit or contract at any time.

¶32  It is also noteworthy that the legislature made a distinction between the term "void," as used in Wis. Stat. § 30.2095(1)(a), and the term "expiration," as used in § 30.2095(1)(b) and (2).  These terms are presumed to have distinct meanings.  See Johnson v. City of Edgerton, 207 Wis. 2d 343, 351, 558 N.W.2d 653 (Ct. App. 1996).  Given its plain meaning, where a grantee needs additional time to complete a project, he or she may ask to extend the expiration date of a permit pursuant to § 30.2095(1)(b) to prevent a permit from becoming void under § 30.2095(1)(a).  The DNR possesses a limited right to modify a permit until the earlier of the expiration date of the permit or the date when pier placement was completed, as set forth in § 30.2095(2).  However, that right does not include the ability to require partial removal of a pier, and substantial modification to a permit, over 14 years after a pier was placed.[12]

---

[12] The dissent opines that the DNR selected a "permit amendment track," via its necessarily implied authority. Dissent, ¶73.  The DNR did not follow any statutorily proscribed procedures; instead, the DNR appeared to act unilaterally in demanding changes to the Myers' pier.

16

¶33 A review of the language used in ch. 30 further supports the conclusion that a pier permit is akin to a building permit and includes no additional requirements for ongoing maintenance and use. As previously noted, "[s]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." Kalal, 271 Wis. 2d 633, ¶45. Pier permits are described throughout ch. 30 in reference to the "placement" of a structure. See, e.g., Wis. Stat. § 30.12(1)(a)(providing that a permit is required to "place any structure upon the bed of any navigable water"); § 30.12(3m)(a)(providing that a permit is required "in order to place the structure for the owner's use"). The Merriam Webster Dictionary defines place as "to put in or as if in a particular place or position: set." "Place," Merriam Webster Online Dictionary (2018), https://www.merriam-webster.com/dictionary/place. Therefore, "[p]lacement" refers to setting a pier in the navigable waters, not the ongoing use of a pier.

¶34 Where the legislature intends to include the responsibility of ongoing maintenance, it specifies as such, as seen in Wis. Stat. § 30.131, which regulates piers "placed and maintained by persons other than riparian owners." If "placed" was synonymous with "maintained," the word "maintained" in § 30.131 would be surplusage. Additionally, in enacting regulations for a permit for a dam, the legislature clarified that the permit also includes ongoing maintenance. See, e.g.,

17

Wis. Stat. § 31.05 (describing the permit as one "to construct, operate and maintain a dam"). We look to the words chosen by the legislature in the context of the entirety of Wis. Stat. ch. 30 and conclude that the Myers' pier permit was akin to a building permit.

¶35 Because we conclude that the DNR lacked authority to amend the Myers' permit, we need not reach the issues that surround the application of the statutory exemptions in Wis. Stat. § 30.12(1k), including the court of appeals' reliance on "implicit findings" made by the DNR at a public informational hearing.

### IV. CONCLUSION

¶36 On petition to this court, the Myers sought review of the DNR's authority to amend their 2001 pier permit. The Myers also sought review as to whether two exemptions in Wis. Stat. § 30.12(1k) barred the DNR's actions. Lastly, the Myers sought review of whether the court of appeals could rely on "implicit findings" made by the DNR at a public informational hearing to conclude that the statutory exemptions in § 30.12(1k) did not apply to the Myers' pier.

¶37 We conclude that the DNR could not reserve to itself the authority to amend the Myers' permit through Condition 1. We conclude that Wis. Stat. § 30.12(3m)(d)2. did not provide the DNR with statutory authorization to insert Condition 1 in the Myers' permit. Further, we conclude that because the Myers' permit expired, Wis. Stat. § 30.2095 did not provide the DNR with the authority to modify or rescind the Myers' permit for

18

"good cause." Because the DNR had no authority to amend the Myers' permit and we reverse the court of appeals' decision, we need not address whether the statutory exemptions found in § 30.12(1k) applied to the Myers' pier.

*By the Court.*—The decision of the court of appeals is reversed.

¶38 ANN WALSH BRADLEY, J. *(dissenting).* Although the administrative law judge initially found that granting the Myers' permit request would likely not have detrimental effects, he also observed "it is not always possible to predict the impact of a particular structure in such a dynamic system."

¶39 The ALJ's admonition proved prescient. A decade after the Myers completed construction of their pier, the DNR received complaints from neighbors that the Myers' pier was not operating as intended. Specifically, the neighbors asserted that the pier was exacerbating shoreline erosion and causing "loss of riparian property." Majority op., ¶9.

¶40 To remedy the now-apparent defects in the pier, the DNR issued a permit amendment requiring that the Myers modify their pier in one of two ways. Id., ¶12. The Myers declined to pursue either modification option presented by the DNR and instead have pursued judicial review of the DNR's action.

¶41 Upon review, the majority concludes that the DNR lacks the statutory authority to amend the permit. Id., ¶37; see Wis. Stat. §§ 30.12(3m)(d)2., 30.2095. It reaches this erroneous conclusion by writing words into the statutes, failing to follow its own analytical construct, and arriving at an unreasonable result that could leave the DNR toothless to address some piers that violate the public interest. In my view, the pier-permitting statutes necessarily imply a grant of power to the DNR to amend permits. Accordingly, I respectfully dissent.

1

I

A

¶42 The majority's first error lies in reading words into the pier-permitting statutes that simply are not there.

¶43 Pursuant to Wis. Stat. § 30.12(1), all structures that are "placed" upon the bed of any navigable water require a permit. In the majority's view, "placement" "refers to setting a pier in the navigable waters, not the ongoing use of a pier." Majority op., ¶33. Accordingly, in the majority's estimation, a pier permit is "akin to a building permit," and is not required for the ongoing maintenance of a pier. Id., ¶28.

¶44 Such a distinction is salient because if the permit is for building only, then the permit conditions would not govern the ongoing maintenance of the pier. Conversely, if the permit is required for maintenance of a pier, then the obligations it creates do not end when construction is complete.

¶45 As a threshold to its analysis, the majority correctly sets forth the principles that govern statutory interpretation. See majority op., ¶18. Statutory interpretation begins with the language of the statute. State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. If the meaning of the statute is plain, we need not further the inquiry. Id. However, we must interpret statutes reasonably, to avoid absurd or unreasonable results. Id., ¶46.

¶46 With repeated assurances to the reader that it is embracing a plain meaning interpretation, the majority warns of the nemesis of plain meaning, i.e. writing words into the

2

statute. Majority op., ¶24. And it advises the reader that we will refrain from doing so here. Id. Nevertheless, after such proclamations and protestations, the majority fundamentally alters the statute by writing into it an outcome-determinative word not written by the legislature. Although it pays lip service to a plain meaning interpretation, the majority fails to follow it.

¶47 Nowhere in the statutes on which the majority relies does the legislature delineate that a pier permit is a "construction" or "building" permit. This stands in marked contrast to the numerous statutes where the legislature has specified that a permit is a "construction" permit or "building" permit. See, e.g., Wis. Stat. § 31.05 (specifying that a permit is to "construct, operate and maintain a dam"); § 66.1036 (referring to the requirement that a "building permit" be the provided to county clerk); § 101.654(1)(a) (setting forth requirements for the issuance of a "building permit"); § 145.195 (referring to a "permit for construction" of any structure); § 285.60(1)(a) (referencing a "construction permit" for construction, reconstruction, replacement, or modification of a stationary air pollution source). When the legislature wants a permit to be a construction or building permit, it knows how to indicate as much.

¶48 Additionally, a standard principle of statutory interpretation requires that, except for technical or specially defined words, we give words their common, ordinary, and accepted meaning. Kalal, 271 Wis. 2d 633, ¶45. Yet, contrary

3

to this principle, the majority asserts that the word "building" is essentially a substitute for the word "placement." In the majority's view, "placement" cannot be ongoing. Such an assertion lacks citation and support in either the statute or the dictionary.[1]

¶49 The Merriam Webster dictionary offers two sentences as examples for the use of the word "placement" indicating that "placement" does not end when an object is initially installed. "Placement," Merriam Webster Online Dictionary (2018), https://www.merriam-webster.com/dictionary/placement. Neither supports the majority's assertion.[2] Another commonly utilized dictionary includes in the definition of "placement," "[t]he state of being placed or arranged." The American Heritage Dictionary of the English Language 1382 (5th ed. 2011). There is no indication that this "state of being" is not ongoing.

¶50 As set forth in chapter 30, the plain language of the statutory scheme leads me to the conclusion that a permit is required to maintain a pier, not only to construct one. For example, the plain language of Wis. Stat. § 30.12(3m)(c) states that the DNR "shall issue an individual permit to a riparian owner for a structure" if the statutory requirements are met

---

[1] See State v. Sample, 215 Wis. 2d 487, ¶21, 573 N.W.2d 187 (1998) ("For purposes of statutory interpretation or construction, the common and approved usage of words may be established by consulting dictionary definitions.").

[2] Two examples offered are "the strategic placement of products at the entrance of a store" and "the placement of microphones around the room."

(emphasis added). The statute does not say that a permit shall be issued for the construction or building of a structure only. By reading the word "building" into the statute, the majority violates our established framework of statutory interpretation.

¶51 The upshot of my analysis is that the Myers' permit did not "expire" when construction on their pier was finished. Rather, the statutes set forth a continuing obligation to meet the requirements of the permit.

B

¶52 The majority's second error lies in its failure to follow its own analytical construct.

¶53 It correctly observes that "[a]n administrative agency has only those powers expressly conferred or necessarily implied by the statutory provisions under which it operates." Majority op., ¶21 (emphasis added) (citing Kimberly-Clark Corp. v. Public Serv. Comm'n of Wis., 110 Wis. 2d 455, 461-62, 329 N.W.2d 143 (1983)). However, the majority's analysis suffers from a singular focus on powers "expressly conferred" by chapter 30 while neglecting to analyze those "necessarily implied."

¶54 A permit for the placement of a pier shall not issue if the pier materially obstructs navigation, is detrimental to the public interest, or materially reduces the flood flow capacity of a stream. Wis. Stat. § 30.12(3m)(c). In the majority's view, these three requirements need only apply at the time a pier is constructed, and "[t]here is no support in the plain language of Wis. Stat. ch. 30 for the DNR's claim that a

5

pier permit carries with it an ongoing requirement to satisfy" them.  Majority op., ¶24.

¶55  Essentially, the majority determines that the DNR has the power to issue a permit that is akin to a building permit, but not a permit for the maintaining of a pier.  It bases its conclusion on the language of the statute, but neglects to even consider that such a power is "necessarily implied" in the statutory scheme.  In my view, it is.

¶56  Wisconsin Stat. § 30.12(3m)(c) clearly provides that a permit shall issue if the three enumerated criteria are met.  As a corollary, if any of the criteria are not met, a permit shall not issue.

¶57  The question raised in this case is what happens when a pier meets the criteria of Wis. Stat. § 30.12(3m)(c) when it is initially installed, but at some point conditions change and the pier no longer meets the statutory requirements.  The statute dictates that if the requirements are not met, then a permit shall not issue.  This means that the non-compliant condition must be corrected.

¶58  In order to bring the pier into compliance with the statute, the permit must be amended, and the statute "necessarily implies" that the DNR has this power.  If the DNR did not have this power, the result would be a host of piers that violate the requirements of Wis. Stat. § 30.12(3m)(c), and the DNR possibly left with no means to address them.  See infra, ¶¶59-66.  As I discuss next, this is an unreasonable result that the legislature could not have intended.

6

C

¶59 The majority's third error lies in reaching an unreasonable result.

¶60 In denying the DNR the ability to amend the Myers' permit, the majority allows for the very thing the legislature has explicitly prohibited in Wis. Stat. § 30.12(3m)(c), i.e. it allows a pier to remain even if it obstructs navigation, is a detriment to the public interest, or reduces flood flow capacity. Further, the majority's interpretation may deprive the DNR of any remedy at all in similar situations.

¶61 The majority's result is unreasonable because it allows for a pier to remain in a state of disrepair and impairment of the public interest. Wisconsin Stat. § 30.12(3m)(c)2. is clear in its mandate that a permit shall not issue if a structure will be detrimental to the public interest. Yet, the majority allows for this very thing——as long as a pier does not begin to become detrimental to the public interest until after it is constructed, the permit for that pier can never be amended.

¶62 It is also unreasonable to potentially leave the DNR toothless in the face of a pier that obstructs navigation, is detrimental to the public interest, or will reduce the flood flow capacity of a stream. If the DNR cannot modify the permit to remedy a detrimental condition in a pier, its remaining option (absent informal resolution) is to bring an enforcement

7

action.  See Wis. Stat. § 30.03(4)(a) (authorizing DNR to bring an enforcement action).[3]

¶63  However, in some situations a pier may be exempt from enforcement.  See Wis. Stat. § 30.12(1k)(cm).  In such a situation, the majority would leave the DNR powerless to act to remedy a defect that is detrimental to the public interest or the riparian rights of surrounding landowners.  I view this result as unreasonable.

¶64  Although the Myers' pier was not contrary to the public interest when it was built, it is perfectly plausible that conditions may change.  Here it is alleged that the pier has become contrary to the public interest or interferes with the rights of other riparian owners.

¶65  Indeed, the DNR determined that "the existing 12-foot flow-through opening is not functioning as intended consistently enough to provide sufficient movement of water and sediment on a regular basis to prevent the interruption of the natural littoral processes."  The impact is that "[t]his disruption, in turn, is exacerbating the formation of land on the bed of Lake Superior and starving adjacent 'down-drift' properties of sediment."

¶66  If the DNR cannot modify a permit and cannot bring an enforcement action because of an exemption, the public interest

---

[3] An enforcement action can be maintained for "a possible violation of s. 281.36 or of the statutes relating to navigable waters or a possible infringement of the public rights relating to navigable waters."  Wis. Stat. § 30.03(4)(a).

8

in maintaining the waters of this state falls by the wayside in the event lake conditions change.  The DNR should not be so hamstrung in fulfilling its duty.

II

¶67  Because I determine that the DNR has the necessarily implied authority to amend the Myers' pier permit, I briefly address the Myers' arguments that statutory exemptions bar such permit amendments.[4]  The Myers cite to two statutory exemptions in an attempt to avoid the DNR's permit amendments.  First, they assert that the grandfather exemption, Wis. Stat. § 30.12(1k)(b), applies to their pier.  Second, they contend that the enforcement exemption, § 30.12(1k)(cm), bars the permit amendments in this case.  Neither provision has the effect the Myers desire.

¶68  The grandfather exemption, Wis. Stat. § 30.12(1k)(b), provides in relevant part:

---

[4] The Myers also argue that the evidence presented at the informational hearing was insufficient to support the permit amendment.  The DNR made the following factual finding:

> Based on the information gathered and further discussion with the Sea Grant coastal engineer, the Department has determined that the existing 12-foot flow-through opening is not functioning as intended consistently enough to provide sufficient movement of water and sediment on a regular basis to prevent the interruption of the natural littoral processes.  This disruption, in turn, is exacerbating the formation of land on the bed of Lake Superior and starving adjacent 'down-drift' properties of sediment.

Such a finding is certainly sufficient to support the determination that the pier is detrimental to the public interest.

9

> [A] riparian owner of a pier or wharf that was placed on the bed of a navigable water before April 17, 2012, is exempt from the permit requirements under this section unless any of the following applies:
>
> > 1m.  The department notified the riparian owner before August 1, 2012, that the pier or wharf is detrimental to the public interest.
> >
> > 2. The pier or wharf interferes with the riparian rights of other riparian owners.

¶69  If the grandfather exemption applies, the consequences are set forth in Wis. Stat. § 30.12(1k)(e):

> [A] riparian owner who is exempt . . . may do all of the following:
>
> > 1.  Repair and maintain the exempt structure without obtaining a permit from the department under this section unless the owner enlarges the structure.
> >
> > 2.  If the exempt structure is a pier or wharf, relocate or reconfigure the pier or wharf if the riparian owner does not enlarge the pier or wharf.

In other words, if the exemption applies, the Myers need not obtain a permit to repair and maintain the pier.

¶70  The DNR contends that the grandfather exemption does not apply here because the Myers possess a permit for their pier.  I agree.  The grandfather exemption states that if the conditions are met, a pier owner is not required to "obtain" a permit in order to maintain the pier.  Wis. Stat. § 30.12(1k)(e)(1).  The use of the word "obtain" indicates that a pier covered by the statute did not have a permit before, hence the need to "obtain" one.  As analyzed above, I determine that the Myers' pier was permitted.  Accordingly, the grandfather exemption does not apply.

¶71 Similarly, the enforcement exemption does not apply. The enforcement exemption provides:

> The department may not take any enforcement action under this chapter against a riparian owner for the placement of any of the following:
>
> 1. A structure for which the department has issued a permit under this section, if the structure is in compliance with that permit.
>
> 2. A structure for which the department has issued a written authorization, if the structure is in compliance with that written authorization.
>
> 3. A structure that is exempt under par. (b) [the grandfather exemption].

Wis. Stat. § 30.12(1k)(cm).

¶72 Any argument that this exemption is applicable must be based on the premise that DNR's actions here in amending the permit constitute an "enforcement action." This premise fails.

¶73 Pursuant to chapter 30 of the Wisconsin statutes, the DNR can remedy a defect in a pier by following one of two tracks: permit amendment by way of its necessarily implied authority or enforcement via Wis. Stat. § 30.03. In this case, the DNR chose to follow the permit amendment track. The DNR did not bring an "enforcement action" here, thus the "enforcement" exemption is not applicable.

¶74 There are key differences between the permit amendment and enforcement tracks. An enforcement action is brought pursuant to Wis. Stat. § 30.03. Enforcement hearings proceed in accordance with ch. 227. See § 30.03(4)(a). The end result of an enforcement action can be an order issued by a hearing examiner "directing the responsible parties to perform or

11

refrain from performing acts in order to comply with s. 281.36 or to fully protect the interests of the public in the navigable waters." § 30.03(4)(a).

¶75 That is not what happened in this case. Here there was only a public informational hearing. A hearing examiner did not enter any injunction against the Myers. Rather, the DNR issued a permit amendment. Because there was no enforcement action, the enforcement exemption is inapplicable.

¶76 In sum, the majority allows a pier with clear defects to remain in a state of disrepair and impairment of the public interest. The impact of the majority opinion, however, is not limited to the Myers' pier. On bodies of water large and small, the majority opinion raises the specter that riparian owners cannot rely on the DNR to protect the public interest if a neighboring pier stops working as intended due to shifting lake conditions. Because this result is contrary to the legislative intent, I respectfully dissent.