COURT OF APPEALS
DECISION
DATED AND FILED

April 13, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP1531**

STATE OF WISCONSIN

Cir. Ct. No. **2018CV1336**

IN COURT OF APPEALS
DISTRICT III

ANTHONY GREENE,

    PETITIONER-APPELLANT,

V.

MARK MONE, CHANCELLOR OF THE UNIVERSITY OF MILWAUKEE, AND BOARD OF REGENTS OF THE UNIVERSITY OF WISCONSIN SYSTEM,

    RESPONDENTS-RESPONDENTS.

        APPEAL from an order of the circuit court for Brown County: WILLIAM M. ATKINSON, Judge. *Affirmed*.

        Before Stark, P.J., Hruz and Seidl, JJ.

        **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Anthony Greene appeals from a circuit court order dismissing his petition for judicial review of an administrative decision finding just cause to terminate his tenured faculty position at the University of Wisconsin-Milwaukee (UWM). We affirm.

**BACKGROUND**

¶2 A complaint was filed with UWM's Chancellor against Greene, alleging that he: (1) failed to meet UWM's expectations for effective teaching and scholarship; (2) discriminated against students and staff based on disability; and (3) displayed a lack of professionalism toward students and colleagues. The complaint also sought Greene's suspension from teaching and advising duties during the pendency of the complaint proceedings.

¶3 The Chancellor appointed three UWM professors to investigate the complaint. After doing so, their investigation and findings were summarized in a detailed report, as was their recommendation that Greene be dismissed from his faculty position as an associate professor of psychology.

¶4 The Chancellor issued a written statement of the specific charges, and Greene requested a hearing. A hearing was held before UWM's standing Faculty Dismissal Hearing Committee, where the testimony of five witnesses was presented and twenty-nine exhibits were submitted. Greene chose not to attend the hearing, but he had the opportunity to review the video record of the hearing and provide a written response to the evidence presented and the posthearing questions. The Dismissal Hearing Committee issued a unanimous decision concluding that the three charges had been substantiated.

¶5 The Chancellor reviewed the Committee's decision and recommendations and he agreed there was just cause for Greene's dismissal. The Chancellor then forwarded his recommendation for dismissal to the University of Wisconsin President for submission to the Board of Regents for formal action. The Board's Personnel Matters Review Committee heard oral arguments and determined that it would recommend that the Chancellor's dismissal decision be upheld. The Board then issued a written decision adopting the recommended findings and decision of the Personnel Matters Review Committee to dismiss Greene from his position as a tenured associate professor of psychology.

¶6 Greene sought judicial review. He argued the proceedings were void ab initio because a senior colleague, who sat on an earlier faculty committee hearing Greene's complaint that the colleague had engaged in a continuous pattern of harassment against him, had a conflict of interest; that his suspension during the process was arbitrary and capricious; and that "other laws were deliberately broken," including Wisconsin's safe place statute. The circuit court dismissed the petition, and Greene now appeals.

## DISCUSSION

¶7 We review the Board's decision, not the circuit court's. *Myers v. DNR*, 2019 WI 5, ¶17, 385 Wis. 2d 176, 922 N.W.2d 47. We apply the "substantial evidence" standard, affording significant deference to the Board's findings. *See Milwaukee Symphony Orchestra v. DOR*, 2010 WI 33, ¶31, 324 Wis. 2d 68, 781 N.W.2d 674. "Substantial evidence" means that after considering all the evidence, reasonable minds could arrive at the conclusion reached by the Board. *See id.* Therefore, we affirm the Board's decision unless a reasonable person could not have reached the decision based upon the evidence and

reasonable inferences that may be drawn from it. *See Hamilton v. DILHR*, 94 Wis. 2d 611, 618, 288 N.W.2d 857 (1980). The burden of showing the Board's decision was not supported by credible and substantial evidence is on Greene. *See Xcel Energy Servs., Inc. v. LIRC*, 2013 WI 64, ¶48, 349 Wis. 2d 234, 833 N.W.2d 665.

¶8    Here, the evidence supports the Board's conclusion that there was just cause for Greene's dismissal. To establish "just cause," UWM had to prove that Greene's conduct could reasonably be said to have a tendency to impair his performance of the duties of his position. *See Safransky v. State Pers. Bd.*, 62 Wis. 2d 464, 474, 215 N.W.2d 379 (1974).

¶9    The administrative record clearly establishes that Greene failed to meet UWM's expectations for effective teaching and scholarship. First, Greene's undergraduate teaching was shown to be deficient. UWM received a disproportionate number of student complaints regarding Greene. At one point, 42% of student complaints in the Psychology Department were about Greene despite the fact that he represented only 4% of the full-time faculty and instructors. Members of the Department's Executive Committee counseled Greene but, despite the counseling, Greene failed to complete basic tasks such as entering grades by required deadlines. One of the courses Greene taught was a prerequisite for an advanced course, and the Psychology Department was delayed in verifying that Greene's students had passed the prerequisite class in order for the students to progress to advanced coursework.

¶10    Greene was placed on a formal monitoring plan for three semesters, but even then he failed to meet basic teaching obligations, including failing to update syllabi and to timely launch an online course. He also failed to cooperate

with the monitoring requirements, such as copying the monitoring team on his emails with students.

¶11    Second, Greene's graduate-student teaching and mentorship was deficient.  Greene's graduate students were not making adequate progress or successfully completing the program as compared to graduate students of other tenured faculty.  Greene had a significantly higher attrition rate of Ph.D. students, and he published far fewer papers with his students.  In addition, his research was unacceptable, and he had not published a paper in well over a decade.

¶12    Moreover, substantial evidence showed that Greene discriminated against students and staff members based on disability.  Students with approved academic accommodation plans complained that Greene failed to grant accommodations in a timely manner or made demeaning comments to them.  Greene failed to grant extra exam time to a student with a disability, even though this student had emailed her accommodation plan to Greene almost two months prior to the exam.  In response, rather than granting the accommodation, Greene accused the student of falsifying her email to him and falsifying her accommodation paperwork.  He also refused to speak on the telephone via a relay service with a hearing impaired staff member who was returning a call to discuss this matter.   Greene offered no evidence to rebut the evidence of his discriminatory treatment of students with disabilities.

¶13    When the same student missed a subsequent exam for medical reasons, Greene told the student via email that her physician could submit a typed letter, that it could not be handwritten, and that it needed to be "printed on the kind of tamper proof papers physicians use for prescriptions and letters of this sort."

The hearing impaired staff member stated: "The documentation that is needed is listed on our website. Tamper-proof paper is not one of them."

¶14 Quite simply, there is significant documentation in the administrative record supporting the conclusion that Greene's performance was unacceptably poor in many facets of his job, and that his conduct sufficiently undermined the efficient performance of his duties of employment. Greene argues that "just cause" must mean more than "a professor has changed his syllabus, or that his dissertation students left him for a different mentor."[1] But Greene virtually ignores the robust administrative record showing longstanding problems in many facets of his job that worsened over the years.

¶15 In further support of his argument that the Board erred in dismissing him, Greene also cites case law involving tenured college professors who claimed constitutional or statutory interests in continued employment. These cases are not helpful because they do no more than show that tenured employment is a right that can be taken away when due process is provided; Greene received due process in this case.

¶16 Greene also argues it was arbitrary and capricious for the Chancellor to suspend him and immediately exclude him from campus while his dismissal was under consideration. He asserts that, even assuming he had done the things he

---

[1] We note that Greene's appellate briefs fail to provide citation to the record on appeal, in violation of WIS. STAT. RULE 809.19(1)(e) (2019-20), which requires an appellant's brief "to contain the contention of the appellant, the reasons therefor, with citations to the authorities, statutes and parts of the record relied on." We are not required to fish through the record to find support for a party's contentions. We admonish Greene that future violations of the rules of appellate procedure may result in sanctions, including refusal to consider such arguments. *See Alswager v. Roundy's, Inc.*, 2005 WI App 3, ¶15, 278 Wis. 2d 598, 692 N.W.2d 333 (2004).

was accused of, "there can be no contention that they represent great and imminent harm." However, a tenured professor can be suspended while a dismissal decision is pending. *See* WIS. ADMIN. CODE § UWS 4.09 (Sept. 2016). In any event, whether Greene should have been suspended from his teaching and advising duties while his dismissal was being considered by UWM and the Board is a moot point given our conclusion that the Board had just cause to terminate his employment.

¶17 Greene also argues the employment termination decision was unacceptably compromised because a colleague "who sat for ten months on [UWM's] Faculty Rights and Responsibilities Committee [FRRC] hearing Greene's complaint against himself had a non-waivable conflict of interest." Greene contends his own performance had deteriorated because he had been bullied by this colleague.

¶18 By way of background, Greene had previously filed a complaint with the FRRC alleging a pattern of harassing behavior by the colleague, but after an investigation it was determined that there was insufficient evidence to substantiate Greene's allegation. Moreover, Greene does not explain how the colleague's service on the FRRC was related in any way to UWM's standing Faculty Dismissal Hearing Committee that recommended Greene's dismissal to the Chancellor, much less to the Board whose ultimate decision is the subject of the present appeal. To that extent, Greene's argument is undeveloped, and we need not further address it. *See **State v. O'Connell***, 179 Wis. 2d 598, 609, 508 N.W.2d 23 (Ct. App. 1993). Regardless, whatever conflict of interest Greene believes his colleague had, it was not relevant to the Board's decision at issue here.

¶19 Finally, Greene argues that his dismissal violated Wisconsin's safe place statute. *See* WIS. STAT. § 101.11 (2019-20). The safe place statute is a negligence statute that imposes a duty to construct, repair, or maintain a safe place of employment or public building. *See **Mair v. Trollhaugen Ski Resort***, 2006 WI 61, ¶19, 291 Wis. 2d 132, 715 N.W.2d 598. Greene concedes that he "did not include reference to the Wisconsin Safe Place Statute in earlier submissions." He also acknowledges that he has "not located any published Wisconsin appellate decisions that address whether this law applies to protecting employees from mental cruelty." Nevertheless, Greene asks this court "to consider the issue as part of the overall consideration of the University's indifference to Professor Greene's suffering at the hands of [his colleague], which is itself a form of negligence." Along these lines, Greene contends UWM was "long aware of [his] fragile condition and the harm which [his colleague] was inflicting, [but] it took no more action than to report that he was 'improving.'"

¶20 Even if we overlook Greene's forfeiture by failing to raise this claim during Board proceedings, and we could somehow accept Greene's premise that the safe place statute can address mental harm in the workplace, he fails to explain how a claim raising that theory would in any way prevent an employer from proving just cause for dismissal. Greene's termination does not implicate the safe place statute. There is substantial and credible evidence in the administrative record justifying the Board's decision to terminate Greene's employment for just cause.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2019-20).