HRUZ, J.
*433 *197 ¶1 James Moran appeals an order affirming a decision of the Wisconsin Department of Justice (DOJ) denying Moran's application to purchase *198 a handgun in Wisconsin. Moran was convicted of a felony in Virginia and, upon the completion of his sentence, he petitioned to have his right to possess a firearm restored in that state. The Virginia courts granted Moran's petition, and Moran eventually moved to Wisconsin, where he attempted to purchase a firearm. The purchase was blocked by the DOJ based upon its conclusion that, as a felon who had not received a pardon for his crime, Moran was not permitted to possess a firearm in this state.
¶2 Moran raises numerous arguments challenging the DOJ's determination. He contends the DOJ improperly interpreted WIS. STAT. § 941.29(5) (2017-18),[1] which identifies two circumstances under which a felon can lawfully possess a firearm in this state. We agree with the DOJ that, under the plain language of subsec. (5), a felon must either have received a pardon with respect to his or her crime, see subsec. (5)(a), or have obtained relief from his or her disabilities under an identified federal statute, see subsec. (5)(b). Moran has satisfied neither of these conditions. We reject Moran's assertions that § 941.29(5) has been preempted by federal legislation, and that the restoration of his right to possess a firearm in Virginia is the equivalent of a pardon for purposes of Wisconsin law.
¶3 We also reject various constitutional arguments Moran advances. Contrary to Moran's assertions, the interpretation of WIS. STAT. § 941.29(5) adopted by the DOJ does not violate the Full Faith and Credit Clause of the United States Constitution. That clause does not require the State of Wisconsin to defer *199 to Virginia law with respect to the circumstances under which a felon residing in this state may possess firearms within this state's borders. Furthermore, we conclude that the DOJ's determination with respect to Moran's ability to possess a firearm in Wisconsin does not deprive Moran of his right to bear arms under either the federal constitution or state constitution. Because the DOJ properly denied Moran's application to purchase a firearm, we affirm the circuit court's order upholding that determination.
BACKGROUND
¶4 The relevant facts are undisputed. Moran is a current resident of Chippewa County, Wisconsin, and was previously a resident of Virginia. In 1995, Moran was adjudicated guilty in Virginia of felony embezzlement in an amount greater than $200. A three-year sentence was imposed and stayed pending Moran's completion of a five-year probation term, along with his payment of restitution in the amount of $30,700. Moran successfully completed the term of probation and paid all outstanding fines and costs.
*434 ¶5 The Virginia felony conviction resulted in Moran losing several civil rights in Virginia, including his rights to vote, to hold public office, and to possess firearms. Following the completion of his probation term, Moran petitioned the governor of Virginia to restore his civil rights. The governor in 2006 granted Moran's petition, removing "all political disabilities imposed as a result of [his] felony conviction except the right to ship, transport, possess or receive firearms." (Emphasis added.)
¶6 To restore his right to possess a firearm in Virginia, Moran was required to petition the Virginia circuit court in the jurisdiction in which he resided. See *200 VA. CODE ANN. § 18.2-308.2(C) (2018).[2] On November 6, 2013, the Circuit Court of Loudoun County, Virginia, entered a final order granting Moran a permit to carry a firearm. Thereafter, Moran obtained a permit to carry a concealed handgun in Virginia, and he purchased at least one firearm in Virginia after receiving approval from the National Instant Criminal Background Check System (NICS).
¶7 On October 5, 2016, Moran attempted to purchase a handgun in Wisconsin, where he now permanently resides.[3] Moran's purchase was denied by Wisconsin's background check system based upon his Virginia felony conviction. Moran appealed the denial, which the DOJ's Crime Information Bureau upheld. The Crime Information Bureau advised Moran that under Wisconsin law-specifically, WIS. STAT. § 941.29(5) -his firearm rights could be restored only by his being granted a pardon or by the federal government's restoration of his firearm rights under 18 U.S.C. § 925(c) (2012).[4]
¶8 Moran appealed the Crime Information Bureau's determination to the administrator of the DOJ's Division of Law Enforcement Services, pursuant to WIS. ADMIN. CODE § JUS 10.09 (Aug. 2012). Moran asserted that WIS. STAT. § 941.29(5) had been "invalidated by congressional action," in that the statutory prerequisites for relief under that section depended on *201 federal rights restoration programs that had been either repealed or defunded. Moran also asserted that he was entitled to purchase a firearm based upon amendments to federal law enacted as part of the Firearm Owners' Protection Act of 1986. Finally, Moran claimed that refusing to allow his gun purchase denied him his right to bear arms under the United States and Wisconsin constitutions.
¶9 The administrator denied Moran's appeal.[5] He concluded the documentation Moran had supplied did not establish that Moran's felony conviction in Virginia should be excluded under WIS. STAT. § 941.29(5). Consequently, Moran was disqualified from purchasing or possessing a firearm in Wisconsin. The administrator remarked that the DOJ was without statutory authority to grant an exception to *435 such disqualification except to the extent provided in § 941.29(5), which exceptions were not applicable in Moran's case.
¶10 Moran sought judicial review of the administrator's decision, pursuant to WIS. STAT. ch. 227. The circuit court also identified WIS. STAT. § 941.29(5) as the only mechanism by which a convicted felon can have his or her right to possess a firearm in Wisconsin restored. The court concluded the proper interpretation of that statute, given the existing state of federal law, required that a felon first receive a pardon before *202 being eligible to purchase or possess firearms in Wisconsin. The court then observed it was undisputed that Moran had not received a pardon under Virginia law, and it concluded the process Moran had navigated to have his firearm rights restored in that state was not the equivalent of a pardon in Wisconsin. Finally, the court rejected Moran's constitutional arguments-namely, his assertions that the denial violated his constitutional rights to bear arms and that the United States Constitution's Full Faith and Credit Clause required Wisconsin to recognize his restoration of rights under Virginia law. Moran now appeals.
DISCUSSION
¶11 This is an appeal under WIS. STAT. § 227.58 involving an agency decision. In such an appeal, we review the decision of the agency, not the decision of the circuit court. Myers v. DNR , 2019 WI 5, ¶17, 385 Wis. 2d 176, 922 N.W.2d 47. Our supreme court recently ended the practice of deferring to an administrative agency's conclusions of law. Id. (citing Tetra Tech EC, Inc. v. DOR , 2018 WI 75, ¶3, 382 Wis. 2d 496, 914 N.W.2d 21 ). However, when we evaluate the persuasiveness of an administrative agency's arguments, we give "due weight" to the agency's experience, technical competence, and specialized knowledge. Id.
¶12 The facts of this case are undisputed, so we address only questions of law-primarily, questions of statutory interpretation and constitutional law. We decide questions of statutory interpretation de novo. Id. , ¶18. When we engage in statutory interpretation, *203 we begin with the statute's language, which is generally given its common, ordinary and accepted meaning. Id. If the language yields a plain, clear statutory meaning, the statute is unambiguous, and we apply the language as written without resorting to extrinsic sources. Id. Moreover, whether a statute is constitutional and whether an individual has been denied a constitutional right are questions of law that we review de novo. State v. Culver , 2018 WI App 55, ¶37, 384 Wis. 2d 222, 918 N.W.2d 103, review denied , 2019 WI 8, 385 Wis. 2d 206, 923 N.W.2d 165.
I. WISCONSIN STAT. § 941.29(5) prohibits Moran from purchasing a firearm in Wisconsin.
¶13 The purchase of handguns in Wisconsin is regulated by WIS. STAT. § 175.35, which provides the DOJ with authority to promulgate rules regarding the transfer of such firearms. The statute specifically requires that the DOJ perform a record search for firearm restrictions concerning a prospective handgun purchaser. See § 175.35(2g)(c)1. After receiving a completed notification form from a dealer regarding a prospective purchaser, the DOJ must determine whether the purchaser is prohibited under state or federal law from possessing a firearm. Sec. 175.35(2g)(c)4. The DOJ then ultimately either approves the purchase or issues a nonapproval to the dealer, thereby prohibiting the transfer. Id.
*436 ¶14 Approval or nonapproval of a handgun purchase under WIS. STAT. § 175.35(2g)(c)4. turns upon whether the prospective purchaser is prohibited from possessing a firearm under WIS. STAT. § 941.29. Section 941.29(1m)(b), in turn, makes it a felony for a person to possess a firearm if he or she "has been convicted of a *204 crime elsewhere that would be a felony if committed in this state." Moran does not dispute that the crime for which he was convicted in Virginia is also a felony under Wisconsin law.
¶15 There are certain circumstances, however, under which our legislature has determined that a felon may lawfully possess a firearm. Two such circumstances are set forth in subsec. (5) of WIS. STAT. § 941.29. First, subsec. (5) lifts the prohibition on firearm possession for any person who has received a pardon for the felony that would disqualify him or her and has been expressly authorized to possess a firearm under 18 U.S.C. app. § 1203 (1982).[6] Sec. 941.29(5)(a). Second, subsec. (5) makes it lawful to possess a firearm for any person who has obtained "relief from disabilities" under 18 U.S.C. § 925(c). Sec. 941.29(5)(b). Thus, the exceptions under subsecs. (5)(a) and (5)(b) collectively depend, at least in part, upon two provisions of federal law, both of which have changed since the time § 941.29 was enacted. To properly frame Moran's argument on appeal, it is necessary that we examine the history of the Wisconsin statute and its interrelated federal provisions.
¶16 WISCONSIN STAT. § 941.29 was created in 1981. See 1981 Wis. Laws, ch. 141, § 1. As originally enacted, it contained largely the same exception under subsec. (5)(a) that exists today. Again, subsec. (5)(a) contains two prerequisites to the lawful possession of a firearm by a felon: the person must have received a pardon, and he or she must have been expressly authorized to possess a firearm under 18 U.S.C. app. § 1203. Section 1203, which was located in an appendix *205 to Title 18 of the United States Code, exempted from the reach of the federal felon-in-possession statute "any person who has been pardoned by the President of the United States or the chief executive of a State and has expressly been authorized by the President or such chief executive, as the case may be, to receive, possess, or transport in commerce a firearm." 18 U.S.C. app. § 1203(2). By invoking that particular provision of federal law, the Wisconsin legislature appeared to require that, to receive the benefit of § 941.29(5)(a), a convicted felon must obtain a pardon from a state or federal executive authority that explicitly permitted him or her to receive, possess or transport firearms. See 78 Wis. Op. Att'y Gen. 22 (1989).
¶17 Subsequent changes in federal law generated uncertainty regarding the applicability of WIS. STAT. § 941.29(5)(a). In 1986, Congress repealed both the federal statute making it a crime for a felon to possess a firearm and the statute permitting such possession with explicit authorization following a pardon. See Firearm Owners' Protection Act, Pub. L. No. 99-308, § 104(b), 100 Stat. 449, 459 (1986). Although Congress subsequently reenacted the prohibition on felons possessing firearms, see 18 U.S.C. § 922(g)(1), it did not reenact the executive clemency exception contained in 18 U.S.C. app. § 1203. Instead, Congress elected to treat the felon's status as a definitional matter within the statutory scheme:
*437 What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, *206 or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.
Firearm Owners' Protection Act, Pub. L. No. 99-308, § 101(5), 100 Stat. 449, 450 (1986) (codified at 18 U.S.C. § 921(a)(20) ).
¶18 The federal revisions had the effect of flipping the presumption associated with a felon's ability to possess a firearm following a pardon. Whereas previously an act of executive clemency was required to affirmatively state that the pardoned felon was permitted to possess firearms, under the Firearm Owners' Protection Act, a felon granted clemency from his or her conviction was now permitted to possess firearms unless the form of relief granted from a felony conviction specifically forbid it. Yet, Wisconsin's legislature has not updated our statutes to keep pace with the changes to federal law, meaning WIS. STAT. § 941.29(5)(a) continues to refer to 18 U.S.C. app. § 1203-a federal statute that no longer exists.
¶19 A similar problem follows the second exception to the state felon-in-possession crime under WIS. STAT. § 941.29(5)(b). Subsection (5)(b) provides that it is not a crime to possess a firearm for any felon who has "obtained relief from disabilities under 18 U.S.C. § 925(c)." In turn, § 925(c) permits a felon to apply to the Bureau of Alcohol, Tobacco and Firearms (ATF) for a restoration of his or her firearm privileges.[7] However, since 1992, Congress has provided in each ATF appropriations *207 bill that none of the appropriated funds are to be used to investigate or act upon applications for relief from federal firearms disabilities.[8] United States v. Bean , 537 U.S. 71, 74-75, 123 S.Ct. 584, 154 L.Ed.2d 483 (2002) ; Jefferies v. Sessions , 278 F. Supp. 3d 831, 839 n.54 (E.D. Pa. 2017). As a result, § 925(c) -and, by extension, § 941.29(5)(b) -does not provide a functional mechanism for relief from the firearms disability imposed upon felons under Wisconsin law.
¶20 Moran essentially contends that by repealing 18 U.S.C. app. § 1203 and defunding the program established under 18 U.S.C. § 925(c), Congress usurped Wisconsin's authority to regulate the circumstances under which a felon may possess a firearm in this state. In other words, Moran asserts that WIS. STAT. § 941.29(5) has been preempted, and he invokes the federal Supremacy Clause, U.S. CONST. art. VI, cl. 2, to argue that the provision controlling his ability to possess a firearm in Wisconsin is now 18 U.S.C. § 921(a)(20) -the definitional statute governing what is a *438 "conviction" for purposes of the federal felon-in-possession statute. If Moran is correct, and the federal definition applies, he would be entitled to possess a firearm because his civil rights have been restored for his felony conviction in Virginia. *208 ¶21 But Moran's logic does not follow from WIS. STAT. § 941.29(5) 's text or the history articulated above. His "preemption" argument rests on the idea that state and federal law conflict. Conflict preemption exists when it is impossible to comply with both state and federal law, or where state law stands as an obstacle to the execution of the full purposes and objectives of Congress.[9] Oneok, Inc. v. Learjet, Inc. , --- U.S. ----, 135 S. Ct. 1591, 1595, 191 L.Ed.2d 511 (2015) ; M & I Marshall & Ilsley Bank v. Guaranty Fin., MHC , 2011 WI App 82, ¶23, 334 Wis. 2d 173, 800 N.W.2d 476. We begin with a presumption that Congress did not intend to supplant state law. See M & I , 334 Wis. 2d 173, ¶22, 800 N.W.2d 476. "The preemptive effect of a federal law generally presents a question of law." Id. , ¶21.
¶22 In support of his assertion that a conflict exists, Moran primarily relies on a 1989 opinion of the Wisconsin Attorney General. See 78 Wis. Op. Att'y Gen. 22 (1989).[10] Then-Governor Tommy Thompson had requested the attorney general's opinion regarding whether WIS. STAT. § 941.29(5)(a) was still valid following Congress's enactment of the Firearm Owners'
*209 Protection Act and corresponding repeal of 18 U.S.C. app. § 1203.[11] 78 Wis. Op. Att'y Gen. at 22. Moran emphasizes the attorney general's conclusion that § 941.29(5)(a) was "invalidated by congressional action" based upon supremacy principles. See 78 Wis. Op. Att'y Gen. at 22, 25. Lost in Moran's reasoning, however, is the nuance of the attorney general's conclusion regarding the scope of that preemptive effect.
¶23 Contrary to what Moran seems to believe, the attorney general does not appear to have concluded that WIS. STAT. § 941.29(5)(a) was preempted in toto. Rather, the attorney general opined that § 941.29(5)(a) was superseded by federal law only "[t]o the extent that the state law frustrates both the specific language and intent" of the Firearm Owners' Protection Act. 78 Wis. Op. Att'y Gen. at 25. The attorney general specifically stated that the "conflict" arose by virtue of the Wisconsin statute's specific invocation of the repealed federal statute and was limited to the fact that the Wisconsin statute required that a pardon expressly restore a felon's right to receive, possess or transport firearms. Id. The attorney general further opined that Congress, by repealing the 18 U.S.C. app. § 1203, had altered the factual conditions underpinning the state statute, "effectively render[ing] section 941.29(5)(a) unenforceable." 78 Wis. Op. Att'y Gen. at 25. As a result, the attorney *439 general concluded that a pardon alone was effective to restore a felon's firearm rights, regardless of whether it contained an explicit statement to that effect. *210 ¶24 But there remains no doubt that under WIS. STAT. § 941.29(5)(a), a pardon-not merely a restoration of rights-remains necessary for a felon to be relieved of his or her firearms disabilities. Although Congress has adopted a more relaxed definition of "conviction" than has Wisconsin, Moran does not receive the benefit of the 18 U.S.C. § 921(a)(20) definition for purposes of the state prohibition on firearm possession by a felon. Federalism principles require this result.
¶25 To further explain, both Congress and the State of Wisconsin have made it a crime, generally speaking, for a felon to possess a firearm. As discussed above, the federal statute excludes a greater number of individuals from the scope of the general prohibition than does the Wisconsin statute. By enacting 18 U.S.C. § 921(a)(20), Congress decided that felons who have been relieved of the consequences of their criminal conduct, in whole or in part-by expunction, pardon, or a restoration of civil rights-may lawfully possess a firearm under federal law, and, consequently, may not be prosecuted for a violation of 18 U.S.C. § 922(g)(1).
¶26 Our state legislature has not reached a similar conclusion with respect to the exception contained in WIS. STAT. § 941.29(5)(a), which conditions the lawful possession of firearms on the felon having received a pardon only. The repeal of 18 U.S.C. app. § 1203 and the enactment of 18 U.S.C. § 921(a)(20) occurred over three decades ago. There has been ample time for the Wisconsin legislature to respond to the changes to the federal felon-in-possession statutes by adopting the less-restrictive federal standard, if it wished to do so. Yet, it has not so acted. Under these circumstances, we must give effect to the plain language *211 of § 941.29(5)(a), at least to the greatest extent possible given the repeal of the specific federal statute cited within it.
¶27 In asserting a conflict between the relevant state and federal statutes, Moran does not attempt to argue that substantive state and federal criminal law must perfectly align. Instead, he argues-rather summarily-that the Wisconsin statute stands as an obstacle to Congress's objectives in enacting the Firearm Owners' Protection Act, which Moran asserts included "ratify[ing] a state's restoration of firearm rights to appropriate persons." This is a confounding and circular argument that merely leads back to the question of whether the federal government has preempted state criminal law whenever the state criminalizes something that is expressly made lawful for purposes of the federal criminal code. Again, Moran makes no attempt to develop an argument on the latter point. See State v. Pettit , 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) ("We may decline to review issues inadequately briefed.").
¶28 In substance, the only real "conflict" that Moran suggests exists between state and federal law in this area concerns his ability to "hunt[ ] on federal lands within Wisconsin." Moran summarily claims he can lawfully hunt on such lands. In his view, an "irreconcilable conflict with state law arises because all of those properties are surrounded by state lands, and [Moran is precluded] ... from lawfully traversing state of Wisconsin land to access the federal lands."
¶29 We are unpersuaded that any such conflict exists. As an initial matter, Moran does not provide any legal support for his assertion that he is allowed to possess a firearm on the various federal *440 properties *212 within this state. Authority over federal lands within a state may range from exclusive federal jurisdiction with no residual state police power, to concurrent or partial federal legislative jurisdiction, under which the State retains some authority. Kleppe v. New Mexico , 426 U.S. 529, 542, 96 S.Ct. 2285, 49 L.Ed.2d 34 (1976). Moran's generalized and unsupported claim that he can lawfully possess a firearm on federal property in Wisconsin without regard to this state's laws regarding firearm ownership is insufficient to demonstrate the existence of that right. See Pettit , 171 Wis. 2d at 646, 492 N.W.2d 633 ("Arguments unsupported by references to legal authority will not be considered.").
¶30 Additionally, Moran waited until his reply brief to present the supposed conflict concerning his ability to travel over state lands to gun hunt on United States territory. This strategy deprived the State of the opportunity to address the issue, which is why we typically do not allow an appellant to raise new matters in the reply brief. See A.O. Smith Corp. v. Allstate Ins. Cos. , 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998). Even if we were to overlook both Moran's inadequate briefing and his failure to timely raise the argument, and if we were to assume without deciding that he may possess a firearm on federal land, state and federal law do not truly conflict in this instance. At most, Moran has merely asserted he cannot make full use of his ability to possess a firearm under federal law because he cannot travel with a firearm while he is in the state of Wisconsin. However, Wisconsin law, by its plain terms, does not preclude him from possessing a firearm on federal territory, and there may be some jurisdictions where Moran can take full advantage of his rights. Ultimately, Moran cites no authority establishing *213 that mere inconvenience in his successfully bringing a firearm onto federal territory creates a constitutional conflict between the two sets of laws.
¶31 Having rejected the notion that federal law preempts Wisconsin law in this particular area, we now turn to whether Moran has satisfied the requirements of WIS. STAT. § 941.29(5). As we explain, Moran does not qualify to possess a firearm under either § 941.29(5)(a) or (5)(b), and therefore the DOJ properly denied his firearm transfer application based upon the statute.
¶32 To begin, Moran only truly challenges the DOJ's application of WIS. STAT. § 941.29(5)(a) in this instance.[12] As previously explained, subsec. (5)(a) applies to a felon who has received a pardon, regardless of whether the pardon expressly authorizes the possession of a firearm. Moran argues that Virginia's firearm rights restoration process is the "functional equivalent" of a pardon under Wisconsin law. We therefore turn to Virginia law to determine whether Moran has received a pardon under the laws of that state and, if not, whether the restoration of rights process is indeed the equivalent of a pardon under Wisconsin law.
¶33 The first clue that Moran has not received a pardon is found in the Virginia Constitution, which clearly distinguishes between a pardon and a restoration of rights. The Virginia governor has the power "to grant reprieves and pardons *441 after conviction except *214 when the prosecution has been carried on by the House of Delegates," but the governor also has the separate authority "to remove political disabilities consequent upon conviction for offenses committed prior or subsequent to the adoption" of the Virginia Constitution. VA. CONST. art. V, § 12. The separate identification of these powers provides compelling evidence that they are not one and the same.
¶34 Beyond the plain text of the Virginia Constitution's executive clemency authority, Virginia courts have recognized that the processes are different for obtaining a pardon as opposed to the removal of political disabilities. The Virginia governor may grant a full, partial or conditional pardon. Blount v. Clarke , 291 Va. 198, 782 S.E.2d 152, 155 (2016). A full pardon officially nullifies all punishment or other legal consequences of a crime, while a partial pardon exonerates the offender from some, but not all, of the punishment or legal consequences. Id. A conditional pardon either does not become effective until the offender satisfies a prerequisite or is revocable upon some specified act by the offender. Id.
¶35 By contrast, in Virginia the restoration of rights pertaining to firearms requires the shared exercise of authority by the executive and judicial branches. "[T]he Governor is empowered to remove political disabilities, but not to restore all rights lost as a result of a felony conviction. The jurisdiction to restore firearm rights lost in those circumstances is vested solely in the circuit courts." Gallagher v. Commonwealth , 284 Va. 444, 732 S.E.2d 22, 26 (2012) ; see also VA. CODE ANN. § 18.2-308.2(C). Moran followed the restoration-of-rights process, resulting in his being relieved of the political disabilities attendant to his felony conviction, including his right to possess a *215 firearm in Virginia. Still, he has not received a pardon of any fashion for that crime, either here or there.
¶36 Instead, Moran proposes that the removal of his political disabilities in Virginia represents the "functional equivalent" of a pardon under Wisconsin law. The Wisconsin Constitution provides the governor with the "power to grant reprieves, commutations and pardons." WIS. CONST. art. V, § 6. The pardon power rests solely with the governor, and there are no constitutional standards the governor must follow when determining whether to grant clemency. In re Webb , 89 Wis. 354, 356, 62 N.W. 177 (1895) ; see also Donald Leo Bach, To Forgive, Divine: The Governor's Pardoning Power , WIS. LAW. , Feb. 2005, at 12, 14.
¶37 To be sure, there are certain similarities between a restoration of rights in Virginia and a pardon in Wisconsin. Generally speaking, both involve appeals to the executive's discretion. In Virginia, in addition to pardon authority, the constitution also places the primary responsibility for the restoration of rights on the executive. Thus, a felon's rights in Virginia are removed until they are individually restored by the governor. And Moran is correct that a pardon and a restoration of rights in both jurisdictions have the practical effect of relieving a defendant of some of the consequences of his or her criminal conduct.
¶38 The similarities between the two forms of relief end there. Wisconsin has its own restoration of rights process, and it varies significantly from that of Virginia's process. In Wisconsin, the restoration of a felon's rights is purely statutory and occurs automatically when a person "serve[s] out his or her term of imprisonment or otherwise satisf[ies] his or her sentence."
*216 WIS. STAT. § 304.078(2) ; see also Buchmeier v. United States , 581 F.3d 561, 567 (7th Cir. 2009) ("Many states remove *442 some convictions from a person's record, or restore some civil rights, after the passage of time, without the need for a pardon or other special dispensation.").[13] Had our legislature desired to make the restoration of rights a sufficient basis for a felon to possess a firearm in Wisconsin, it could have very easily said so under WIS. STAT. § 941.29(5) by invoking the existing Wisconsin restoration-of-rights statute.
¶39 Beyond the fact that Wisconsin and Virginia law clearly distinguish between a pardon and the restoration of rights, the fundamental nature of those acts is quite different. The restoration of rights supplies the felon with some of the political rights that were stripped by virtue of the conviction, including the right to vote, see WIS. STAT. § 6.03(1)(b), and it only does so following the offender's completion of his or her sentence. By contrast, a pardon is "an act of grace, proceeding from the power [entrusted] with the execution of the laws, which exempts the individual, on whom it is bestowed, from the punishment the law inflicts for a crime he has committed."
*217 State ex rel. Rodd v. Verage , 177 Wis. 295, 325, 187 N.W. 830 (1922), overruled on other grounds by State v. King , 82 Wis. 2d 124, 262 N.W.2d 80 (1978) (citing United States v. Wilson , 32 U.S. (7 Pet.) 150, 160, 8 L.Ed. 640 (1833) ). Thus, a pardon goes well beyond merely restoring a felon's lost rights following the successful completion of his or her sentence; it conveys official forgiveness for a crime and potentially curtails some punishment arising from that offense.
¶40 Wisconsin law already provides an example of the foregoing concepts with respect to the right of a felon to hold positions of public trust. Prior to amendment in 1996, the Wisconsin Constitution provided that individuals convicted of "infamous" crimes were ineligible to hold public office. See Swan v. LaFollette , 231 Wis. 2d 633, 636 & n.2, 605 N.W.2d 640 (Ct. App. 1999) ; Law Enf't Standards Bd. v. Village of Lyndon Station , 98 Wis. 2d 229, 238, 295 N.W.2d 818 (Ct. App. 1980), aff'd , 101 Wis. 2d 472, 305 N.W.2d 89 (1981). In Village of Lyndon Station , the village asserted that the "infamous crimes" provision did not apply to its police chief because the chief had his civil rights restored following his felony convictions by virtue of the then-existing restoration-of-rights statute. Village of Lyndon Station , 98 Wis. 2d at 244-45, 295 N.W.2d 818. We rejected this argument, observing that such an interpretation would be unconstitutional in light of the constitution's blanket prohibition on felons holding public office. Id. at 245-46, 295 N.W.2d 818. Instead, we adopted a saving construction of the restoration-of-rights statute, holding that its operation did not restore the right to hold public office. Id.
¶41 In 1996, the Wisconsin Constitution was amended to prohibit any person convicted of a felony from holding "any office of trust, profit or honor in this *218 state unless pardoned of the conviction." WIS. CONST. art. XIII, § 3. In crafting the amendment, the legislature could have overturned the Village of Lyndon Station decision and avoided the conflict recognized in that decision *443 by conditioning a felon's ability to hold public office upon the completion of his or her sentence and the subsequent restoration of his or her rights as provided by statute. Yet, the legislature (and the people of Wisconsin) instead decided to limit the availability of public office to only those felons who had received a pardon from the governor. This constitutional history demonstrates that Wisconsin law differentiates between a pardon and the restoration of rights so as to defeat Moran's equivalency claim.
¶42 In sum, we conclude that Moran is unable to avail himself of the plain language of WIS. STAT. § 941.29(5)(a). Our legislature has determined that a pardon is necessary for a felon to be eligible to possess a firearm in this state. Moran has not received a pardon for his Virginia crime, either in that state or in this one.[14] The restoration of Moran's rights in Virginia is not a pardon for purposes of Wisconsin law, regardless of there being some similarity in their effect. If Moran wishes to possess a firearm in this state absent a pardon, his recourse is to petition our legislature to amend § 941.29(5). Under the current law, he is excluded from the scope of subsec. (5) and, therefore, is not entitled to possess a firearm in Wisconsin.
*219 II. WISCONSIN STAT. § 941.29(5) does not violate Moran's state or federal constitutional rights.
¶43 Moran next argues that, if WIS. STAT. § 941.29(5) is interpreted to bar his ability to possess a firearm, he has been denied his rights under the Full Faith and Credit Clause of the United States Constitution. That clause states that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." U.S. CONST. art. IV, § 1. Moran acknowledges that "Virginia has a novel constitutional [and] statutory scheme regarding restoration of rights which requires approval by both the governor and the circuit court." He asserts that this process is "more rigorous than a simple gubernatorial pardon" and that, because of this supposedly more stringent process, Wisconsin cannot "ignore the judgment of the Virginia court, which fully restored Moran's rights to possess a firearm."
¶44 Again, Moran's analysis ignores critical nuances associated with his restoration of rights in Virginia. Namely, the Virginia restoration-of-rights order did not purport to restore his rights in any other jurisdiction. Even if it had, the United States Supreme Court has consistently held "that the Full Faith and Credit Clause does not require a State to substitute for its own statute, applicable to persons and events within it, the statute of another State reflecting a conflicting and opposed policy." Carroll v. Lanza , 349 U.S. 408, 412, 75 S.Ct. 804, 99 L.Ed. 1183 (1955) ; see also Franchise Tax Bd. v. Hyatt , --- U.S. ----, 136 S. Ct. 1277, 1281, 194 L.Ed.2d 431 (2016). However, the clause does prohibit a state from adopting a "policy of hostility" to the public acts of another state. Franchise Tax Bd. , 136 S. Ct. at 1281.
*220 ¶45 WISCONSIN STAT. § 941.29(5), which speaks only to Moran's ability to possess a firearm within Wisconsin's borders and does not purport to affect Moran's rights under Virginia law, does not evidence any such hostility to the *444 Virginia restoration-of-rights order. Moreover, the State of Wisconsin has substantial interests in the application of its own criminal law and in deciding who is allowed to lawfully possess a firearm within its boundaries. See Alaska Packers Ass'n v. Industrial Accident Comm'n , 294 U.S. 532, 547, 55 S.Ct. 518, 79 L.Ed. 1044 (1935) (holding that conflicts in state law are "to be resolved, not by ... compelling the courts of each state to subordinate its own statutes to those of the other, but by appraising the governmental interests of each jurisdiction, and turning the scale of decision according to their weight").
¶46 The State marshals numerous foreign decisions to its aid on this issue, most notably People v. Shear , 71 Cal.App.4th 278, 83 Cal. Rptr. 2d 707 (1999). In Shear , the defendant raised the Full Faith and Credit Clause as a defense to his California prosecution for firearm possession by a felon, asserting that California was constitutionally required to recognize the restoration of his rights in Arizona. Id. at 708-09. After surveying the relevant federal case law, the California Court of Appeal rejected this argument. It concluded California was competent to legislate on the matter of its criminal law, the issue concerned the application of California's domestic policy within the state, and California had a significant state interest in the application of that law to a California resident. Id. at 713. The court also recognized that permitting the defendant to possess a firearm when he would otherwise be prohibited from doing so under state law was a result *221 "obnoxious" to the public policy of the forum. Id. at 713-14. "There can be few more significant public policies of this state than that of protecting the safety of its citizens by barring convicted felons, persons who have proved unfit to be entrusted with firearms, from possessing them." Id. at 714. We find the California Court of Appeal's reasoning persuasive.
¶47 Moran argues that Shear is distinguishable from this case because the California Constitution, unlike the Wisconsin Constitution, does not guarantee its citizens the right to keep and bear arms. See WIS. CONST. art. I, § 25. As a result, he argues this state's public policy differs from California's in a material way, and, consequently, the restoration of his firearm possession rights pursuant to the Full Faith and Credit Clause would be "consistent" with the Wisconsin Constitution. Moran also makes an independent argument that denying him the ability to possess a firearm under WIS. STAT. § 941.29(5) abridges his right to bear arms under both the United States Constitution and the Wisconsin Constitution.
¶48 Both the United States Constitution and the Wisconsin Constitution recognize an individual's right to keep and bear arms, but in neither instance is the right absolute.[15] In the federal realm, the Supreme *222 Court, when articulating the scope of the individual right in District of Columbia v. Heller , 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), was careful *445 to state that "nothing in [that] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." Id. at 626, 128 S.Ct. 2783. Such regulatory measures are "presumptively lawful." Id. at 627 n.26, 128 S.Ct. 2783. Unsurprisingly then, various federal courts have upheld the federal felon-in-possession statutes in Heller 's wake. See, e.g. , Medina v. Whitaker , 913 F.3d 152, 157-60 (D.C. Cir. 2019) (holding that felons generally, as opposed to only violent offenders, fall outside the scope of Second Amendment protections); United States v. Woolsey , 759 F.3d 905, 909 (8th Cir. 2014) ; United States v. Williams , 616 F.3d 685, 692-94 (7th Cir. 2010) (collecting cases); but see Gowder v. City of Chicago , 923 F. Supp. 2d 1110, 1122 (N.D. Ill. 2012) (distinguishing a nonviolent misdemeanant from individuals with felony or violent crime convictions for purposes of the Second Amendment).[16] *223 ¶49 Moran's argument fares no better under the Wisconsin Constitution. The issue of whether Wisconsin's felon-in-possession statute violated the state constitution was decided prior to Heller . "In State v. Thomas , 2004 WI App 115, ¶¶20, 23, 274 Wis. 2d 513, 683 N.W.2d 497, we held that while Article I, § 25 created a fundamental right to keep and bear arms, the right is subject to reasonable restrictions, such as keeping guns out of the hands of felons to further public safety." State v. Pocian , 2012 WI App 58, ¶8, 341 Wis. 2d 380, 814 N.W.2d 894. Pocian reaffirmed Thomas 's conclusion post- Heller , observing that "[n]o state law banning felons from possessing guns has ever been struck down." Pocian , 341 Wis. 2d 380, ¶12, 814 N.W.2d 894. Pocian also rejected the defendant's as-applied challenge, in which he asserted that Wisconsin's felon-in-possession statute could not be constitutionally applied to individuals with nonviolent felony convictions. Id. , ¶¶13-15. Thus, it is a settled matter of state law that barring felons-even those convicted of nonviolent offenses-from possessing firearms does not violate WIS. CONST. art. I, § 25. See Culver , 384 Wis. 2d 222, ¶46, 918 N.W.2d 103 (recognizing that Pocian is controlling law and that the felon-in-possession ban is constitutional as applied to individuals with both violent and nonviolent felony convictions).
¶50 In sum, we have rejected all of Moran's arguments relating to the meaning and constitutionality of WIS. STAT. § 941.29(5). Moran is not entitled to lawfully possess a firearm under that subsection because he has not received a pardon for his Virginia *224 felony or obtained relief from his firearms disabilities under 18 U.S.C. § 925(c). Interpreting the statute in this manner does not violate the Full Faith and Credit Clause, the Second Amendment of the United States Constitution, or article I, § 25 of the Wisconsin Constitution. We therefore conclude the DOJ properly denied Moran's application to purchase a firearm.
By the Court. -Order affirmed.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

All references to the Virginia Code are to the 2018 version unless otherwise noted.

Based upon the appellate record, it appears that Moran made two attempts to purchase a firearm in Wisconsin: one on June 14, 2016, and another on October 5, 2016. Only the denial of the latter purchase attempt is at issue in this appeal.

All references to the United States Code are to the 2012 version unless otherwise noted.

Although Moran requested that the administrator review the October 2016 denial, the administrator's letter states that his review was of the June 2016 denial, which Moran had earlier appealed to the Crime Information Bureau. Because the June 2016 denial was based upon the same Virginia felony conviction as the subsequent October denial, the administrator's apparent error as to the date of the attempted purchase is immaterial.

Because 18 U.S.C. app. § 1203 has been repealed, all references to that statute are to the 1982 version of the United States Code.

The statutory authority to grant relief from a felon's firearms disability originally rested with the Secretary of the Treasury, who then delegated that authority to the ATF. United States v. Bean , 537 U.S. 71, 74 n.2, 123 S.Ct. 584, 154 L.Ed.2d 483 (2002). Following the reorganization of the ATF into the United States Department of Justice, that statutory authority was given to the United States Attorney General, who has also delegated that authority to the ATF. Kanter v. Barr , 919 F.3d 437, 439 n.2 (7th Cir. 2019) (citing 28 C.F.R. § 0.130(a)(1) (2018) ).

This bar applies only to applications by individuals. Since 1993, Congress has authorized the ATF to expend appropriated funds to investigate and act upon applications filed by corporations for relief from federal firearms disabilities. See Notice Granting Relief; Federal Firearms Privilege, 82 Fed. Reg. 39134-01 (Aug. 17, 2017).

By his failure to respond to the State's argument, Moran effectively concedes that the other form of federal preemption, "field preemption," does not apply. See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp. , 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979). Indeed, Congress specifically stated that no part of 18 U.S.C. ch. 44 is to be construed as indicating an intent by Congress to occupy the field in which such provision operates, except where state and federal law conflict and cannot be reconciled. 18 U.S.C. § 927.

Opinions issued by the Wisconsin Attorney General's office are not binding as precedent, but they may be persuasive as to the meaning of statutes. State v. Beaver Dam Area Dev. Corp. , 2008 WI 90, ¶37, 312 Wis. 2d 84, 752 N.W.2d 295.

Because the attorney general opinion predates the defunding of the 18 U.S.C. § 925(c) program, the opinion dealt only with the repeal of 18 U.S.C. app. § 1203 and, consequently, did not address Wis. Stat. § 941.29(5)(b) 's validity.

As previously explained, because the ATF has not granted any relief under 18 U.S.C. § 925(c) to individuals from their firearms disabilities, the mechanism for relief under Wis. Stat. § 941.29(5)(b) is unavailable to Moran. That fact does not preclude him, however, from obtaining relief under that paragraph in the future should Congress decide to fund that program.

Wisconsin Stat. § 304.078 does not identify which civil rights are restored upon the completion of a sentence, but Moran makes no argument that the rights restored include his right to possess a firearm. In any event, the general rule of statutory construction in Wisconsin when two statutes relate to the same subject matter is that the specific statute controls over the general statute. Gottsacker Real Estate Co. v. DOT , 121 Wis. 2d 264, 269, 359 N.W.2d 164 (Ct. App. 1984). Section 304.078, being a general restoration-of-rights statute, must yield under these circumstances to the more specific statute governing the circumstances under which a felon may lawfully possess a firearm.

In Swan v. LaFollette , 231 Wis. 2d 633, 641 n.7, 605 N.W.2d 640 (Ct. App. 1999), we declined to determine whether the Wisconsin governor lacked the authority to pardon a felon for crimes committed in another jurisdiction. Similarly, it is not necessary in this case for us to determine whether the Wisconsin governor has the authority to pardon a person for a crime in another jurisdiction for purposes of Wis. Stat. § 941.29(5)(a).

The Second Amendment to the United States Constitution states that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." The Wisconsin Constitution provides: "The people have the right to keep and bear arms for security, defense, hunting, recreation or any other lawful purpose." Wis. Const. art. I, § 25.
The Wisconsin Constitution's recognition of the right to bear arms is relatively recent in comparison to the United States Constitution's. Pursuant to Wis. Const. art. XII, § 1, the amendment originated in the legislature and was eventually ratified by a referendum vote by the people of Wisconsin in November 1998. State v. Cole , 2003 WI 112, ¶9 & n.5, 264 Wis. 2d 520, 665 N.W.2d 328. The impetus for the legislation that would ultimately become the amendment was several municipal initiatives to ban handguns. Id. , ¶¶61-71 (Prosser, J., concurring).

To the extent some of these federal decisions speak to the notion that a nonviolent offender subject to the 18 U.S.C. § 922(g)(1) firearm ban might have a meritorious as-applied challenge to prosecution under that section, Moran has not developed any argument along those lines. Indeed, he devotes under two pages of his brief-in-chief to his Second Amendment argument, and the sum total of that argument appears to be his assertion that when one state restores a person's firearm possession rights following the completion of a felony sentence, all other states are required to recognize that person's right to keep and bear arms. Moran's framing the argument in this fashion essentially makes it duplicative of his full faith and credit argument.