**2024 WI App 38**

# COURT OF APPEALS OF WISCONSIN
# PUBLISHED OPINION

Case No.: 2023AP70-FT

†Petition for Review Filed

Complete Title of Case:

SCOT VAN OUDENHOVEN,

PETITIONER-APPELLANT,†

V.

WISCONSIN DEPARTMENT OF JUSTICE,

RESPONDENT-RESPONDENT.

| | |
|---|---|
| Opinion Filed: | June 4, 2024 |
| Submitted on Briefs: | March 13, 2023 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Stark, P.J., Hruz and Gill, JJ. |
| Concurred: | |
| Dissented: | |

Appellant
ATTORNEYS: On behalf of the petitioner-appellant, the cause was submitted on the briefs of *John Monroe*, Dawsonville, Georgia.

Respondent
ATTORNEYS: On behalf of the respondent-respondent, the cause was submitted on the brief of *Joshua L. Kaul*, attorney general, and *Brian P. Keenan*, assistant attorney general.

# COURT OF APPEALS
# DECISION
# DATED AND FILED

## June 4, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.  2023AP70-FT**

**STATE OF WISCONSIN**

Cir. Ct. No.  2022CV580

**IN COURT OF APPEALS**

---

SCOT VAN OUDENHOVEN,

    PETITIONER-APPELLANT,

  V.

WISCONSIN DEPARTMENT OF JUSTICE,

    RESPONDENT-RESPONDENT.

---

APPEAL from an order of the circuit court for Winnebago County: TERESA S. BASILIERE, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

¶1     GILL, J. Scot Van Oudenhoven appeals an order affirming a decision of the Wisconsin Department of Justice ("DOJ") denying his application

to purchase a "handgun"[1] in Wisconsin. The DOJ reasoned that because Van Oudenhoven had been convicted of a Wisconsin crime related to domestic violence, the purchase would violate 18 U.S.C. § 922(g)(9), which states that an individual "who has been convicted in any court of a misdemeanor crime of domestic violence" cannot "possess or … receive any firearm." The DOJ reached this conclusion even though Van Oudenhoven's relevant conviction was expunged under Wisconsin law pursuant to WIS. STAT. § 973.015(1m).

¶2 On appeal, Van Oudenhoven argues that the DOJ erroneously interpreted the applicable laws.[2] First, Van Oudenhoven asserts that the DOJ did not have the authority to deny his handgun purchase under 18 U.S.C. § 922(g)(9). Second, Van Oudenhoven asserts that even if the DOJ had such authority, that statute did not apply to his misdemeanor conviction because the conviction was expunged. *See* 18 U.S.C. § 921(a)(33)(B)(ii) ("A person shall not be considered to

---

[1] For purposes of WIS. STAT. § 175.35(2g)(c)4. (2021-22), the relevant Wisconsin statute, a "handgun" is defined as "any weapon designed or redesigned, or made or remade, and intended to be fired while held in one hand and to use the energy of an explosive to expel a projectile through a smooth or rifled bore." Sec. 175.35(1)(b) (2021-22). For purposes of 18 U.S.C. § 922(g)(9), a "firearm" is defined as either "(A) any weapon … which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device." 18 U.S.C. § 921(a)(3). Van Oudenhoven does not argue on appeal that his Wisconsin handgun fails to meet the definition of a firearm under federal law.

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] This is an expedited appeal under WIS. STAT. RULE 809.17.

have been convicted of [a misdemeanor crime of domestic violence] if the conviction has been expunged or set aside.").[3]

¶3      We conclude that federal law authorizes the DOJ to deny an individual's firearm purchase request in Wisconsin.  Under federal law, which was the basis for denying Van Oudenhoven's purchase at issue in this case, the DOJ's authority to deny a firearm purchase in Wisconsin is conferred to it by the federal government under 28 C.F.R. §§ 25.2 and 25.6(g)(2) (2023).[4]  The DOJ must deny a firearm purchase if the "receipt of a firearm by a prospective transferee would violate 18 U.S.C. [§ ]922 or state law."  Sec. 25.6(g)(2).  We further conclude that Van Oudenhoven was convicted of a misdemeanor crime of domestic violence as that term is defined by federal law.  *See* § 922(g)(9); 18 U.S.C. § 921(a)(33)(A)(ii).

¶4      We also conclude that Van Oudenhoven's misdemeanor conviction was not "expunged or set aside" as those terms are used in 18 U.S.C. § 921(a)(33)(B)(ii).  As other jurisdictions have articulated, the terms "expunged or set aside" in § 921(a)(33)(B)(ii) must be construed synonymously, thereby requiring the "state procedure to completely remove all effects of the conviction at issue." *See, e.g.*, ***Wyoming ex rel. Crank v. United States***, 539 F.3d 1236, 1245 (10th Cir. 2008).  Consistent with our state supreme court's decision in ***State v. Braunschweig***, 2018 WI 113, 384 Wis. 2d 742, 921 N.W.2d 199, expungement pursuant to WIS. STAT. § 973.015(1m) does not "completely remove all effects" of a conviction because the underlying conviction remains valid.  *See* ***Braunschweig***, 384 Wis. 2d

---

[3]  Van Oudenhoven does not challenge the DOJ's decision on Second Amendment grounds or on jurisdictional grounds.  *See* U.S. CONST. amend. II; 18 U.S.C. § 922(g)(9) (including an element that the firearm in question must have been shipped or transported in interstate or foreign commerce).

[4]  All references to the Code of Federal Regulations are to the 2023 version unless otherwise noted.

742, ¶22. Section 973.015(1m) "merely deletes the evidence of the underlying conviction from court records." ***Braunschweig***, 384 Wis. 2d 742, ¶22. We therefore affirm the circuit court's order upholding the DOJ's decision denying Van Oudenhoven's handgun purchase.

## BACKGROUND

¶5    The relevant underlying facts are not in dispute. Van Oudenhoven was convicted in Calumet County case No. 1994CM113 of misdemeanor battery as an act of domestic violence against a woman with whom he shares a child. *See* WIS. STAT. §§ 940.19(1), 968.075(1)(a).[5] In 2019, the Calumet County Circuit Court granted Van Oudenhoven's petition for expungement of the conviction.[6] The order stated that the clerk of court "is ordered to expunge the court's record of the conviction."

¶6    In 2022, Van Oudenhoven attempted to purchase a handgun in Wisconsin. After searching Van Oudenhoven's record in a state database, the DOJ's Crime Information Bureau Firearms Unit ("Unit") denied the purchase based upon Van Oudenhoven's misdemeanor battery conviction. Van Oudenhoven sought review of that denial pursuant to WIS. ADMIN. CODE § Jus 10.08(2) (Aug.

---

[5] The relevant portions of these statutes have not changed since 1994.

[6] It is unclear from the record why Van Oudenhoven's 1994 conviction was expunged in 2019 insomuch as "if a circuit court is going to exercise its discretion to expunge a record, the discretion must be exercised at the time of the sentencing proceeding." *See **State v. Matasek***, 2014 WI 27, ¶6, 353 Wis. 2d 601, 846 N.W.2d 811. However, the DOJ does not challenge the validity of the expungement, and we therefore will not address this issue further.

2012),[7] and the director of the Unit sustained the earlier decision denying the handgun purchase.

¶7 Thereafter, Van Oudenhoven appealed the director's decision to the administrator of the DOJ's Division of Law Enforcement Services.[8] *See* WIS. ADMIN. CODE § Jus 10.09(1). The DOJ sustained the director's denial of the handgun purchase based on Van Oudenhoven's misdemeanor conviction. The DOJ reasoned that WIS. STAT. § 175.35 and WIS. ADMIN. CODE ch. Jus 10 require the agency to "consider state and federal law when conducting a firearms restrictions search." According to the DOJ, under federal law, the agency was required to deny the purchase because Van Oudenhoven was convicted of a "misdemeanor crime of domestic violence" notwithstanding the fact that Van Oudenhoven's conviction was expunged under Wisconsin law. *See* 18 U.S.C. §§ 922(g)(9), 921(a)(33)(B)(ii). Relying on our supreme court's holding in ***Braunschweig***, the DOJ stated that while Van Oudenhoven's misdemeanor conviction was expunged, the conviction still counted under federal law so as to prohibit the purchase because the expungement did not invalidate the underlying conviction.

¶8 Van Oudenhoven filed a petition for judicial review in Winnebago County Circuit Court.[9] *See* WIS. STAT. § 227.52. Following briefing from the parties, the court sustained the DOJ's decision. This appeal follows.

**DISCUSSION**

---

[7] All references to WIS. ADMIN. CODE ch. Jus 10 are to the August 2012 register unless otherwise noted.

[8] We refer to the administrator's decision as the DOJ's decision generally.

[9] Van Oudenhoven is a resident of Winnebago County. *See* WIS. STAT. § 227.53(1)(a)3. This appeal is venued in this court pursuant to WIS. STAT. § 752.21(2).

5

¶9    "On a WIS. STAT. ch. 227 appeal, we review the decision of the agency, not the circuit court." *Myers v. DNR*, 2019 WI 5, ¶17, 385 Wis. 2d 176, 922 N.W.2d 47.  Unless we determine there is "a ground for setting aside, modifying, remanding or ordering agency action or ancillary relief under a specified provision of this section, [we] shall affirm the agency's action."  WIS. STAT. § 227.57(2).  The facts of this case are undisputed, so we address only questions of law—including federal and state statutory interpretation—which we review de novo, while affording "due weight" to "the experience, technical competence, and specialized knowledge of the agency involved." *See* § 227.57(10), (11); *Tetra Tech EC, Inc. v. DOR*, 2018 WI 75, ¶84, 382 Wis. 2d 496, 914 N.W.2d 21; *Doubek v. Kaul*, 2022 WI 31, ¶3, 401 Wis. 2d 575, 973 N.W.2d 756.

¶10    Statutory interpretation begins with the statute's language, which "is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110.  We interpret statutory language "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.*, ¶46.

## I.    The DOJ has the authority to deny a Wisconsin-based firearm purchase that would violate 18 U.S.C. § 922.

¶11    We first conclude, contrary to Van Oudenhoven's arguments on appeal, that the DOJ is authorized by federal law to deny a Wisconsin-based firearm purchase due to a prospective buyer's conviction for a misdemeanor crime of domestic violence.  As we will explain, the DOJ has been delegated by the federal

government as the federal law liaison for firearm purchases in Wisconsin. Here, the DOJ denied Van Oudenhoven's purchase pursuant to federal law, not state law.

### A. Handgun purchases in Wisconsin under state law

¶12    At the state level, "[t]he purchase of handguns in Wisconsin is regulated by WIS. STAT. § 175.35, which provides the DOJ with authority to promulgate rules regarding the transfer of such firearms." *See **Moran v. DOJ***, 2019 WI App 38, ¶13, 388 Wis. 2d 193, 932 N.W.2d 430. Pursuant to that authority, a handgun dealer must obtain from a prospective handgun buyer a completed notification form, which the dealer then forwards to the DOJ. WIS. ADMIN. CODE § Jus 10.06(2)(a)1. After receiving the form, the DOJ must determine whether the purchaser is prohibited under state law from possessing a firearm. *See **Moran***, 388 Wis. 2d 193, ¶13; § Jus 10.06(2)(b), (c). To accomplish that task, the DOJ must search the purchaser's "state criminal history record and the national criminal history record maintained by the" Federal Bureau of Investigation (FBI). Sec. Jus 10.06(2)(a)(2), (b); WIS. ADMIN. CODE § Jus 10.03(11).

¶13    WISCONSIN STAT. § 175.35(2g)(c)4. requires the DOJ to notify a dealer after receiving information from the records search as follows:

> a. If the search indicates that the transferee is prohibited from possessing a firearm under [WIS. STAT. §] 941.29, the [DOJ] shall provide the firearms dealer with a unique nonapproval number.…
>
> b. If the search indicates that the transferee is not prohibited from possessing a firearm under [WIS. STAT. §] 941.29, the [DOJ] shall provide the firearms dealer with a unique approval number.
>
> c. If the search indicates that it is unclear whether the person is prohibited under state or federal law from possessing a firearm and the [DOJ] needs more time to make the determination, the [DOJ] shall make every

> reasonable effort to determine whether the person is prohibited under state or federal law from possessing a firearm and notify the firearms dealer of the results as soon as practicable but no later than 5 working days after the search was requested.

Thus, § 175.35(2g)(c)4.a.-c. outlines the Wisconsin-specific standards for approving or denying a handgun purchase, which "turn[] upon whether the prospective purchaser is prohibited from possessing a firearm under … § 941.29." *See Moran*, 388 Wis. 2d 193, ¶14.

¶14 WISCONSIN STAT. § 175.35(2g)(c)4.c. also recognizes the DOJ's authority to deny a handgun purchase pursuant to federal law, although the statute does not specifically outline that authority. *See Moran*, 388 Wis. 2d 193, ¶14. Instead, the DOJ's authority to deny a handgun—specifically, a "firearm"—purchase under federal law is, of course, governed by federal law.

B. Firearm purchases in Wisconsin under federal law

¶15 The National Instant Criminal Background Check System (NICS) was established by the federal government pursuant to the Brady Handgun Violence Prevention Act. *See* 34 U.S.C. § 40901(b)(1); 28 C.F.R. § 25.2; *Printz v. United States*, 521 U.S. 898, 902 (1997). The NICS, operated by the FBI, is used to determine "whether receipt of a firearm by a prospective transferee would violate [18 U.S.C. § 922] or State law." Sec. 40901(b)(1); § 25.2. Prior to selling a firearm to a potential buyer, a federal firearm licensee (FFL)[10] must contact the NICS Operations Center or a "Point of Contact" (POC) to search a database known as the NICS Index. *See* 28 C.F.R. § 25.6(b)-(d).

---

[10] An FFL is a "person licensed by the [Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF)] as a manufacturer, dealer, or importer of firearms." 28 C.F.R. § 25.2.

¶16     A POC is a "state or local law enforcement agency serving as an intermediary between an FFL and the federal databases checked by the NICS." 28 C.F.R. § 25.2. Since 1998, the DOJ has been the POC for Wisconsin handgun purchases. Therefore, in Wisconsin, an FFL must contact the DOJ to initiate an NICS background check for such purchases. *See* 28 C.F.R. § 25.6(d).

¶17     "Upon receiving a request for a background check from an FFL, a POC will," among other things, "[t]ransmit the request … to the NICS." 28 C.F.R. § 25.6(e). The NICS will conduct a search of the NICS Index and notify the POC of the search results. Sec. 25.6(f). "POCs may also conduct a search of available files in state and local law enforcement and other relevant record systems …." Sec. 25.6(e).

¶18     "[B]ased on the response(s) provided by the NICS, and other information available in the state and local record systems, a POC will" "[n]otify the FFL that the transfer may proceed, is delayed pending further record analysis, or is denied." 28 C.F.R. § 25.6(g)(2). "Denied" means "denial of a firearm transfer based on a[n] NICS response indicating one or more matching records were found providing information demonstrating that receipt of a firearm by a prospective transferee would *violate 18 U.S.C. [§ ]922* or state law."[11]  28 C.F.R. § 25.2 (emphasis added).

¶19     In short, federal statutory and regulatory authority requires the DOJ, as the Wisconsin POC, to determine whether a handgun purchase would violate either state or federal law. Accordingly, pursuant to the plain language of 28 C.F.R. § 25.2, the DOJ was permitted to deny Van Oudenhoven's purchase if the purchase

---

[11] The record in this case does not include the NICS communication to the POC—i.e., the DOJ. *See* 28 U.S.C. § 25.6(f).

would violate 18 U.S.C. § 922. *See* ***Lynch v. Florida Dep't of Law Enf't***, 330 So.3d 140, 141 (Fla. Dist. Ct. App. 2021) (explaining that Florida's POC must determine whether a potential firearm buyer is prohibited from purchasing a firearm under § 922(g)).

### C. "[M]isdemeanor crime of domestic violence"

¶20     Here, as Van Oudenhoven implicitly concedes, his firearm purchase would have violated 18 U.S.C. § 922(g)(9), which states that an individual "who has been convicted in any court of a misdemeanor crime of domestic violence" cannot possess or receive any firearm.[12]   A "misdemeanor crime of domestic violence," as that term is used in § 922(g)(9), is defined as an offense that is a misdemeanor under state law and has an element of "the use or attempted use of physical force … by a person with whom the victim shares a child in common." 18 U.S.C. § 921(a)(33)(A)(ii).

¶21     Van Oudenhoven was convicted of battery as an act of domestic abuse. The police report underlying the conviction, which the DOJ reviewed when it denied the purchase, states that the victim and Van Oudenhoven had a child together at the time of the offense. *See* WIS. STAT. §§ 940.19(1), 968.075(1)(a)1.; ***Kaul***, 401 Wis. 2d 575, ¶6 (whether the domestic violence element in 18 U.S.C. § 921(a)(33)(A)(ii) is satisfied "depends on the facts underlying the conviction, not

---

[12]  Federal law dictates that a denial of a firearm purchase is appropriate where the "receipt of a firearm by a prospective transferee *would violate* 18 U.S.C. [§ ]922 or state law." 28 C.F.R. § 25.2 (emphasis added).   Therefore, the question for the DOJ in this case was whether Van Oudenhoven's successful purchase of the firearm "would violate" § 922(g)(9).   If Van Oudenhoven purchased the firearm, he would possess and receive the firearm, thus violating § 922(g)(9).

the elements of the charged misdemeanor").  Further, the record demonstrates that Van Oudenhoven used or attempted to use physical force.[13]

¶22    Thus, the DOJ did not erroneously interpret the law when it determined that Van Oudenhoven used physical force against an individual with whom he shares a child, and, accordingly, barring certain exceptions that we address in the next section, he was clearly prohibited from possessing or receiving a firearm pursuant to 18 U.S.C. § 922(g)(9).

## II.    Van Oudenhoven is barred from possessing a firearm under federal law despite the expungement of his misdemeanor conviction for a crime of domestic violence.

¶23    The foregoing analysis does not end the inquiry, however, because

> [a] person shall not be considered to have been convicted of [a misdemeanor crime of domestic violence] if the conviction has been *expunged or set aside*, or is an offense for which the person has been pardoned or has had civil rights restored (if the law of the applicable jurisdiction provides for the loss of civil rights under such an offense) unless the pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

*See* 18 U.S.C. § 921(a)(33)(B)(ii) (emphasis added).  Van Oudenhoven's conviction in Calumet County case No. 1994CM113 was expunged in 2019, and the expungement certificate did not "expressly provide[]" that Van Oudenhoven was

---

[13] WISCONSIN STAT. § 940.19(1) includes an element that an individual inflicts bodily harm to another with the intent to cause bodily harm to that person without the consent of the person.  *See* WIS. STAT. § 940.19(1); WIS JI—CRIMINAL 1220 (2015); ***Doubek v. Kaul***, 2022 WI 31, ¶7, 401 Wis. 2d 575, 973 N.W.2d 756 (whether the use of force element in 18 U.S.C. § 921(a)(33)(A)(ii) is met depends "'solely on whether the elements of the crime of conviction sufficiently match the elements' of the relevant federal statute, 'while ignoring the particular facts of the case'" (citation omitted)).

prohibited from possessing or receiving a firearm. Under these circumstances, Van Oudenhoven asserts that his misdemeanor conviction was "expunged or set aside"[14] under § 921(a)(33)(B)(ii). We agree with the DOJ, however, that Van Oudenhoven's conviction was not "expunged or set aside" as those terms are used in § 921(a)(33)(B)(ii).

A. "[E]xpunged or set aside"

¶24 We must now determine the meaning of "expunged or set aside" to ascertain whether Van Oudenhoven was prohibited from purchasing a firearm in Wisconsin. Van Oudenhoven first argues, without citation to any authority aside from 18 U.S.C. § 921(a)(33)(B)(ii), that "[b]ecause the federal statute contains an exception for expunged convictions, federal law is not dependent on the effect *under state law* of the expungement. The federal statute does not require that the state expungement have any particular effect on the conviction as a matter of state law." This assertion has no basis in law. While the underlying misdemeanor crime of domestic violence, and any subsequent state procedures such as expungement, are defined by state law, federal law dictates what constitutes a "conviction" under § 921(a)(33)(B)(ii). *See Logan v. United States*, 552 U.S. 23, 27-28 (2007) (discussing *Dickerson v. New Banner Inst., Inc.*, 460 U.S. 103, 114-15 (1983), and the congressional amendments to § 921 made following that decision). Therefore, for a state conviction that has been expunged not to count as a "conviction," it must meet the meaning of "expunged or set aside" in § 921(a)(33)(B)(ii).

¶25 The terms "expunged" and "set aside" are not defined by federal statute. Van Oudenhoven contends that the United States Supreme Court in *Logan*

---

[14] Van Oudenhoven does not contend that he was "pardoned or has had civil rights restored." *See* 18 U.S.C. § 921(a)(33)(B)(ii).

"announced a common understanding of 'expungement,' 'set-aside,' 'pardoned,' and 'civil rights restored'" when the Court stated, "Each term describes a measure by which the government relieves an offender of *some or all of the consequences* of his [or her] conviction." *See **Logan***, 552 U.S. at 32 (emphasis added). Based on that language, Van Oudenhoven appears to assert that "expunged or set aside" means the government relieves a former offender of "some" of the consequences of his or her conviction.

¶26 We disagree that the Court in ***Logan*** was defining each term with specificity or that it stated an expunged or set aside conviction only requires "some" of the consequences of a conviction to be vacated. Rather, the Court was simply identifying the general differences between those terms and a defendant who retains his or her civil rights and is "simply left alone." *See **id.*** at 32, 37 (concluding that an individual cannot have his or her civil rights "restored" if he or she was never deprived of them to begin with). In addition, and as we will explain, the plain meaning of "expunged or set aside" is better described as "a measure by which the government relieves an offender of … *all* of the consequences of his conviction," rather than "some" consequences. *See **id.*** at 32 (emphasis added).

¶27 Courts interpreting 18 U.S.C. § 921(a)(33)(B)(ii) have consistently construed "expunged" and "set aside" synonymously so as to require the "state procedure to completely remove all effects of the conviction at issue" as a prerequisite to an individual being permitted to possess or receive a firearm. *See, e.g.*, ***Crank***, 539 F.3d at 1245; ***Jennings v. Mukasey***, 511 F.3d 894, 899 (9th Cir. 2007); ***Pennsylvania St. Police v. Drake***, 304 A.3d 801, 806 (Pa. Commw. Ct. 2023); ***Bergman v. Caulk***, 938 N.W.2d 248, 251 & n.3 (Minn. 2020). Although we are not bound by these authorities, *see **State v. Muckerheide***, 2007 WI 5, ¶7, 298 Wis. 2d 553, 725 N.W.2d 930, we find them useful to our analysis given the

13

consistency with which courts have interpreted and applied § 921(a)(33)(B)(ii) and the various interpretative principles those courts have used in their analyses that comport with our principles in **Kalal**.[15]

¶28    In particular, the United States Court of Appeals for the Tenth Circuit has reasoned that the terms "expunged" and "set aside" must be interpreted synonymously so as to "require a complete removal of the effects of a conviction" given: (1) the terms' respective plain meanings; and (2) the structure of the statute. *See Crank*, 539 F.3d at 1245.

¶29    "First, the plain meaning of 'expunge' and 'set aside' are nearly equivalent." *Id.* at 1245. "Expunge" is defined as "[t]o remove from a record …; to erase or destroy." *Expunge*, BLACK'S LAW DICTIONARY (11th ed. 2019); *cf. Expungement of record*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("The removal of a conviction (esp. for a first offense) from a person's criminal record."). "Set aside" is defined as "[t]o annul or vacate (a judgment, order, etc.)." *Set aside*, BLACK'S LAW DICTIONARY (11th ed. 2019). The plain meanings of the terms "expunge"—as opposed to the "expungement of record"—and "set aside" indicate that the relevant state procedure must do more than delete the evidence of the underlying conviction. Rather, the plain meanings indicate that the state procedure must "completely remove all effects of the conviction at issue." *Crank*, 539 F.3d at 1245.

---

[15] Van Oudenhoven does not provide an alternative meaning of 18 U.S.C. § 921(a)(33)(B)(ii). Instead, he merely contests the interpretation provided by the DOJ.

¶30    In addition, one of the few federal expungement statutes, 18 U.S.C. § 3607, dictates expungement for certain controlled substance offenses.[16]  Under § 3607, qualifying individuals found guilty of a controlled substance offense may apply to a court to "enter an expungement order." Sec. 3607(c).  "The effect of the order shall be to restore such person, in the contemplation of the law, to the status he occupied before such arrest or institution of criminal proceedings." *Id.*  "[A] conviction that is the subject of an expungement order under [§ 3607(c)], shall not be considered a conviction for the purpose of a disqualification or a disability imposed by law upon conviction of a crime, or for any other purpose." Sec. 3607(b).  The law also provides that any records of the conviction are destroyed. Sec. 3607(c).  Consequently, federal expungement in the controlled substance context completely removes the effects of a conviction, which comports with the plain meanings of "expunged" and "set aside" described above.

¶31    Second, regarding the statute's structure, the first portion of 18 U.S.C. § 921(a)(33)(B)(ii) lists "four state actions that would remove firearm disability: expunging, setting aside, pardoning, or restoring civil rights." *Crank*, 539 F.3d at 1245.  The second portion of the statute (the "unless" clause) clearly parallels the first portion of the statute; however, it addresses only expunging, pardoning, and restoring civil rights. *See id.*  Thus, "[t]he absence of the term 'set

---

[16] While the connection between 18 U.S.C. §§ 921(a)(33)(B)(ii) and 3607 may seem attenuated at first glance, § 3607 appears to be the only federal statute authorizing expungement of a conviction, as opposed to expungement of records. *See United States v. Lucido*, 612 F.3d 871, 874 (6th Cir. 2010); *United States v. Glaser*, 14 F.3d 1213, 1218 (7th Cir. 1994).  There are at least two other federal expungement statutes; however, neither relate to expunging convictions. *See* 34 U.S.C. § 12592(d) (instructing the director of the FBI on the "expungement of [DNA] records"); 21 U.S.C. § 844(a)(j) (listing the "[e]xpungement procedures" related to civil penalties for the possession of small amounts of controlled substances).

aside' [in the second portion] suggests that Congress felt that 'expungement' in the 'unless' clause covered both 'set asides' and 'expungements.'" ***Id.***

¶32     We find further support for ***Crank***'s interpretation in the manner in which 18 U.S.C. § 921(a)(33)(B)(ii) states that "[a] person shall not be considered to have been convicted of [a misdemeanor crime of domestic violence] if the conviction *has been expunged or set aside, or is an offense for which the person has been pardoned or has had civil rights restored.*"   (Emphasis added.)   The emphasized portion contains two types of situations where a prior conviction does not preclude a firearm purchase.  The first type of situation involves a conviction that was "expunged or set aside."  The second type of situation involves an offense for which an individual was "pardoned or has had [his or her] civil rights restored."

¶33     The United States Supreme Court has concluded that the restoration of civil rights means that an individual has regained "the rights to vote, hold office, and serve on a jury." ***Logan***, 552 U.S. at 28, 37 (defining "civil rights restored" as that term is used in 18 U.S.C. § 921(a)(20)).  A pardon is defined as "[t]he act or an instance of officially nullifying punishment or other legal consequences of a crime." *Pardon*, BLACK'S LAW DICTIONARY (11th ed. 2019).  Hence, given the plain meanings described, the first portion of the emphasized language involves a conviction itself, while the second portion involves the effects of a conviction. Given the structure of § 921(a)(33)(B)(ii), the plain meanings of "expunged" and "set aside," and Congress's use of "expungement" in 18 U.S.C. § 3607, we agree with the Tenth Circuit's analysis in ***Crank*** that those terms must be interpreted to mean the same thing—namely, the state procedure in question must "completely remove all effects of the conviction at issue." *See **Crank***, 539 F.3d at 1245.

¶34 Van Oudenhoven argues in his reply brief, for the first time, that Congress did not intend for "an expungement [to] be a 'complete removal' of the effects of a conviction" because, pursuant to the "unless" clause, a "'complete removal' would … be incomplete if it retained a firearms prohibition." "This court need not address arguments that are raised for the first time on appeal, or … raised for the first time in the reply brief." *State v. Reese*, 2014 WI App 27, ¶14 n.2, 353 Wis. 2d 266, 844 N.W.2d 396.

¶35 Even addressing the merits of Van Oudenhoven's argument, the "unless" clause acts as an exception to the first clause. The flaw in Van Oudenhoven's reasoning is apparent when considering pardons and the restoration of civil rights. Both of those terms in 18 U.S.C. § 921(a)(33)(B)(ii) require the effects of a conviction to be withdrawn, including a prohibition on an individual's right to possess or receive a firearm. If Van Oudenhoven's interpretation were correct, the applicability of the "unless" clause would contradict the plain meanings of "pardoned" and "civil rights restored" because the post-conviction actions would not restore an individual's right to possess or carry a firearm.

¶36 Pursuant to 18 U.S.C. § 921(a)(33)(B)(ii), an individual can be pardoned under state law—i.e., have his or her punishment or other legal consequences of a crime "completely nullified"—and that individual will not be prohibited under 18 U.S.C. § 922(g)(9) from receiving or possessing a firearm barring the applicability of the "unless" clause. *See* § 922(g)(9). Similarly, an individual can have his or her civil rights restored under state law and not be prohibited under § 922(g)(9) from receiving or possessing a firearm. As noted above, "civil rights" in this context refers to the restoration of the right to vote, to hold office, and to serve on juries. *See **Logan***, 552 U.S. at 28. Barring the

17

applicability of the "unless" clause, "[i]f these are restored, then a conviction does not carry federal firearms disabilities."[17] ***Buchmeier v. United States***, 581 F.3d 561, 564 (7th Cir. 2009).

¶37    An individual can have his or her conviction expunged or set aside under state law and not be prohibited under 18 U.S.C. § 922(g)(9) from receiving or possessing a firearm unless expressly provided otherwise.  In other words, the terms expunged, set aside, pardoned, and restoration of civil rights all, by definition, require state action that removes the prohibition on an individual from possessing or receiving a firearm under federal law.  Any of those state procedures would become incomplete if they contained a prohibition on an individual from possessing or receiving a firearm under federal law.  The "unless" clause does not alter the plain

---

[17] For example, in Wisconsin, the restoration of civil rights following the completion of a felony sentence restores the right to vote and to serve on juries. *See* WIS. STAT. § 304.078; ***Moran v. DOJ***, 2019 WI App 38, ¶38 & n.13, 388 Wis. 2d 193, 932 N.W.2d 430 (stating that restoration of civil rights does not include the ability to hold public office).  However, the restoration of civil rights pursuant to Wisconsin law does not lift the restriction on possessing or carrying firearms. *See* WIS. STAT. § 941.29(1m).  Thus, assuming for purposes of this example that civil rights restoration under Wisconsin law meets the definition of civil rights restoration provided in 18 U.S.C. § 921(a)(33)(B)(ii), an individual who completes his or her felony sentence has had his or her civil rights restored, however, the "unless" clause still bars the defendant from possessing or carrying firearms. *See also* 78 Wis. Op. Att'y Gen. 22-23 (1989) (concluding that a pardon under Wisconsin law does not contain a firearm prohibition unless otherwise stated).

meanings in the first clause, and Van Oudenhoven's interpretation would strip those terms of their plain meanings.[18]

## B. Wisconsin expungement

¶38 Wisconsin's expungement law does not completely remove the effects of the conviction in question. Therefore, an expunged conviction does not constitute an "expunged or set aside" conviction under 18 U.S.C. § 921(a)(33)(B)(ii). WISCONSIN STAT. § 973.015(1m) governs expungement in Wisconsin and states, in relevant part:

> [W]hen a person is under the age of 25 at the time of the commission of an offense for which the person has been found guilty in a court for violation of a law for which the maximum period of imprisonment is 6 years or less, the court may order at the time of sentencing that *the record be expunged* upon successful completion of the sentence if the court determines the person will benefit and society will not be harmed by this disposition.…

---

[18] Some jurisdictions have held that the "unless" clause is a "notice" or "anti-mousetrapping" provision, meaning that "a state may not employ language in discharging" a former offender "into the misapprehension" that his or her "rights have been restored to a degree that will permit him [or her] to possess firearms." *See United States v. Erwin*, 902 F.2d 510, 512-13 (7th Cir. 1990) (interpreting the "unless" clause in 18 U.S.C. § 921(a)(2)). Under this reasoning, "[e]ven if a state deems a person 'convicted' for purposes of its domestic law, if it sends a document that seems to restore all civil rights the conviction does not count for federal purposes unless the document warns the person about a lingering firearms disability." *Buchmeier v. United States*, 581 F.3d 561, 566 (7th Cir. 2009).

To the extent that Van Oudenhoven argues that the circuit court's order expunging his misdemeanor conviction misled him to believe that his conviction was completely removed as if there had been no judgment, we disagree. The court's order simply stated what WIS. STAT. § 973.015 states; that is, the records of his misdemeanor conviction were removed. Further, Van Oudenhoven does not contend that he had his civil rights restored—he was convicted of a misdemeanor, not a felony, and could not have had his civil rights revoked to begin with.

(emphasis added); *see also* ***Braunschweig***, 384 Wis. 2d 742, ¶19. "[W]hen expunction is ordered, the clerk of court seals the case and destroys the court records." ***Braunschweig***, 384 Wis. 2d 742, ¶19.

¶39 Our state supreme court recently articulated in ***Braunschweig*** that, unlike vacatur, *see* WIS. STAT. § 973.015(2m),[19] which "removes the fact of conviction" and acts as if "there had been no judgment," Wisconsin's expungement of a conviction merely deletes the evidence of the underlying conviction from court records" and "*does not invalidate the conviction*," ***Braunschweig***, 384 Wis. 2d 742, ¶¶21-22 (emphasis added; citation omitted). In other words, § 973.015 permits removing a conviction from a person's criminal court record, *see Expungement of Record*, BLACK'S LAW DICTIONARY (11th ed. 2019), but it does not completely remove the effects of a conviction. Thus, "a conviction, even though expunged, remains 'an unvacated adjudication of guilt.'" ***Braunschweig***, 384 Wis. 2d 742, ¶¶18, 25 (citing the definition of "conviction" in WIS. STAT. § 340.01(9r)).

¶40 Furthermore, WIS. STAT. § 973.015 does not prevent Wisconsin's executive branch from "maintaining case information" which "may assist [the branch] in identifying suspects, determining whether a suspect might present a threat to officer safety, investigating and solving similar crimes, anticipating and disrupting future criminal actions, [and] informing decisions about arrest or pressing charges." ***Braunschweig***, 384 Wis. 2d 742, ¶28 (quoting ***State v. Leitner***, 2002 WI 77, ¶40, 253 Wis. 2d 449, 646 N.W.2d 341). Applying the Wisconsin expungement statute, the court in ***Braunschweig*** held that an expunged second offense for

---

[19] WISCONSIN STAT. § 973.015(2m) is applicable only to a conviction for an individual who "was a victim of trafficking for the purposes of a commercial sex act." ***Id.***

operating while intoxicated constitutes a prior conviction under WIS. STAT. § 343.307(1). *Braunschweig*, 384 Wis. 2d 742, ¶2.

¶41 Faced with a similar expungement law, the United States Court of Appeals for the Ninth Circuit held that an expungement under California law did not satisfy the meaning of "expunged" in 18 U.S.C. § 921(a)(33)(B)(ii). *See Jennings*, 511 F.3d at 896. In *Jennings*, an FFL sought to renew his license. The ATF denied his application after concluding that his expungement for a misdemeanor domestic assault in California still constituted a conviction. *Id.*; *see also* 18 U.S.C. § 923(d)(1)(B) (prohibiting a prospective firearm seller from becoming an FFL if the seller is prohibited from transporting, shipping, or receiving firearms under 18 U.S.C. § 922(g)).

¶42 In rejecting the FFL's argument that his conviction was "expunged" under 18 U.S.C. § 921(a)(33)(B)(ii), the court articulated that expungement under California law did "not render the conviction a legal nullity. Instead, it provides that … the defendant is 'released from all penalties and disabilities resulting from the offense.'" *Jennings*, 511 F.3d at 898 (citation omitted). According to the court, the expungement law still requires the ex-offender to disclose the conviction "in any questionnaire or application for public office [or] for licensure by any state or local agency." *Id.* at 898-99 (alteration in original; citation omitted). The court concluded that the expungement law did not meet the definition of "expungement" for purposes of § 921(a)(33)(B)(ii), and the FFL was properly denied license renewal. *Jennings*, 511 F.3d at 899.

¶43 Like California's expungement law analyzed in *Jennings*, an expungement under Wisconsin law does not "expunge[] or set aside" a conviction as those terms are used in 18 U.S.C. § 921(a)(33)(B)(ii) because the statute merely

removes evidence of the conviction from court files. This conclusion is evident in the circuit court's order granting Van Oudenhoven's expungement petition, wherein the court instructed the clerk of court "to expunge the court's record of the conviction." Moreover, the executive branch is permitted to access those records to determine, among other things, whether an individual is allowed to purchase a handgun in Wisconsin. *See* WIS. ADMIN. CODE §§ Jus 10.06(2), 10.03(11).

¶44    It follows, then, that Van Oudenhoven's Wisconsin expungement did not "completely remove all effects" of his misdemeanor conviction or "render the conviction a legal nullity." *See Crank*, 539 F.3d at 1245; *Jennings*, 511 F.3d at 898 (citation omitted). Van Oudenhoven's conviction remains an "unvacated adjudication of guilt," *see* WIS. STAT. § 340.01(9r), and, accordingly, the DOJ was able to access his records and deny his application to purchase a handgun in Wisconsin. In short, the DOJ did not erroneously interpret WIS. STAT. § 973.015 or 18 U.S.C. § 921(a)(33)(B)(ii).

## CONCLUSION

¶45    The DOJ is authorized by the State of Wisconsin to determine whether an individual is prohibited from purchasing a handgun in Wisconsin. Similarly, the DOJ is authorized by the federal government to determine whether an individual is prohibited from purchasing a firearm in Wisconsin. Under this latter authorization, the DOJ was permitted to deny Van Oudenhoven's handgun purchase because the "receipt of a firearm by [Van Oudenhoven] would violate 18 U.S.C. [§ ]922," despite the fact that his misdemeanor conviction was expunged under Wisconsin law. *See* 28 C.F.R. § 25.6(g)(2). Consistent with the meaning of "expunged or set aside" in 18 U.S.C. § 921(a)(33)(B)(ii) and the effect of Wisconsin expungement espoused in *Braunschweig*, Van Oudenhoven's conviction was not completely

removed of all effects and remains valid for purposes of denying him permission to purchase a firearm in Wisconsin under federal law. We therefore affirm the circuit court's decision upholding the DOJ's decision to deny Van Oudenhoven's purchase.

*By the Court.*—Order affirmed.